In the Matter of the Accounting of JOHN M. LYON, as Trustee under the Will of DANIEL E. MERRITT, Deceased. ALICE S. LEAL et al., Appellants; JOHN M. LYON et al., Respondents.

392

Submitted April 21, 1939; decided May 23, 1939.

*C. Joseph Danahy* and *John F. X. Sheridan* for Alice S. Leal, appellant. The trust attempted to be set up in the fifth paragraph of the will is not a charitable trust and is illegal and void and against public policy. (*Matter of Beekman*, 232 N. Y. 365; *Matter of Carpenter*, 163 Misc. Rep. 474; *Matter of Lyon*, 173 App. Div. 473; *Moore* v. *United States Cremation Co.*, 275 N. Y. 105.) It is a bequest to a non-incorporated association. (*Mount* v. *Tuttle*, 183 N. Y. 358; *Fralick* v. *Lyford*, 107 App. Div. 543; 187 N. Y. 524; *Catt* v. *Catt*, 118 App. Div. 742; *Owens* v. *Missionary Society*, 14 N. Y. 380; *Longheed* v. *D. B. Church*, 129 N. Y. 211.) The *cy pres* doctrine has no application. (*Saltsman* v. *Greene*, 256 N. Y. 636; *Matter of O'Hanlon*, 147 Misc. Rep. 546; *Matter of Walter*, 150 Misc. Rep. 512; *Beekman* v. *Bonsor*, 23 N. Y. 298; *Bascom* v. *Albertson*, 34 N. Y. 584; *Holmes* v. *Mead*, 52 N. Y. 332; *Prichard* v. *Thompson*, 95 N. Y. 76; *Tilden* v. *Green*, 130 N. Y. 29.) In any event the *cy pres* doctrine will only be applied in cases where there is a general charitable intent. (*Saltsman*

v. *Greene*, 256 N. Y. 636; *Matter of Neher*, 279 N. Y. 370; *Matter of Fletcher*, 280 N. Y. 86.) The remainder of the estate should go to the heirs at law and next of kin of the decedent. (*Matter of Johnston*, 298 N. Y. Supp. 957; *Whistler* v. *Webster*, 2 Ves. 367; *Wilby* v. *Wilby*, 2 Ves. & Bea. 187; *Thelluson* v. *Woodford*, 13 Ves. 225; *Havens* v. *Sackett & Havens*, 15 N. Y. 365; *Oliver* v. *Wells*, 254 N. Y. 451.)

*Woolsey A. Shepard* and *Daniel J. Clifford* for Howard M. Banks, individually and as administrator of Emma E. Merritt, deceased, et al., appellants. The charitable bequest failed to operate as specifically directed because of the adjudicated fraud of testator which eliminated the substance of the gift. There being no expression of a general charitable intent the *cy pres* doctrine is not applicable and the property remaining descends according to the laws of intestacy. (*Matter of Lyon*, 173 App. Div. 473; *Trustees of Sailors' Snug Harbor* v. *Carmody*, 211 N. Y. 286; *Teele* v. *Bishop of Derry*, 168 Mass. 341; *Saltsman* v. *Greene*, 136 Misc. Rep. 497; 231 App. Div. 781; 256 N. Y. 636; *Matter of O'Hanlon*, 147 Misc. Rep. 546; *Matter of Rappolt*, 140 Misc. Rep. 239; *Camp* v. *Presbyterian Society of Sackets Harbor*, 105 Misc. Rep. 139; *Bowden* v. *Brown*, 200 Mass. 269; *Hopkins* v. *Grimshaw*, 165 U. S. 342; *Bancroft* v. *Maine State Sanitarium*, 118 Me. 56; *Bragg* v. *Litchfield*, 212 Mass. 148; *St. Louis* v. *McAllister*, 302 Mo. 152; *Brown* v. *Condit*, 70 N. J. Eq. 440; *Matter of Packe*, [1918] 1 Ch. Div. 437.) The will, in so far as it attempts to leave property in trust to a group of charity trustees, makes a bequest to an unincorporated group or association, which is wholly void and cannot be applied *cy pres*. (*Owens* v. *Missionary Society*, 14 N. Y. 380; *Downing* v. *Marshall*, 23 N. Y. 366; *White* v. *Howard*, 46 N. Y. 144; *Sherwood* v. *American Bible Society*, 1 Keyes, 561; *Fairchild* v. *Edson*, 154 N. Y. 199; *Murray* v. *Miller*, 178 N. Y. 316; *Inglis* v. *Trustees of Sailors' Snug Harbor*, 28 U. S. 99; *Trustees of Sailors' Snug Harbor* v. *Carmody*, 211 N. Y. 286; *Fralick* v. *Lyford*, 107 App.

Div. 543; 187 N. Y. 524; *Mount* v. *Tuttle*, 183 N. Y. 358; *Ely* v. *Megie*, 219 N. Y. 112; *Wright* v. *Wright*, 225 N. Y. 329; *Saltsman* v. *Greene*, 256 N. Y. 636; *Catt* v. *Catt*, 118 App. Div. 742; *Hughes* v. *Stoutenburgh*, 168 App. Div. 512; *Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462.)

*John J. Bennett, Jr., Attorney-General (Robert P. Beyer* of counsel), for respondent. The residuary trust established by the will being for charitable and benevolent purposes, is valid. (*Butterworth* v. *Keeler*, 219 N. Y. 446; *Hamburger* v. *Cornell University*, 204 App. Div. 664; 240 N. Y. 328; *Matter of Frasch*, 245 N. Y. 174; *Matter of MacDowell*, 217 N. Y. 454; *Matter of Judd*, 242 App. Div. 389; 270 N. Y. 516; *Matter of Hall*, 156 Misc. Rep. 841; 247 App. Div. 719; 272 N. Y. 428; *Matter of Robinson*, 203 N. Y. 380; *Matter of Cunningham*, 206 N. Y. 601; *Edgar* v. *Waldo*, 227 N. Y. 656; *Manley* v. *Fiske*, 139 App. Div. 665; 201 N. Y. 546; *Matter of Neher*, 279 N. Y. 370; *Matter of Merritt*, 124 Misc. Rep. 709; 249 N. Y. 532; *Matter of Skuse*, 165 Misc. Rep. 554; *Matter of Dazian*, 167 Misc. Rep. 151.) The court below properly applied the *cy pres* doctrine to effect public burial accommodations for the benefit of the residents of Port Chester and vicinity. (*Matter of Mac-Dowell*, 217 N. Y. 454; *Matter of Gray*, 248 App. Div. 373; 272 N. Y. 635; *Matter of Neher*, 279 N. Y. 370; *City Bank Farmers Trust Co.* v. *Arnold*, 268 N. Y. 297.)

RIPPEY, J. Daniel E. Merritt died on May 22, 1914, leaving a last will and testament, dated October 16, 1913, which was admitted to probate in Westchester county on July 15, 1914, by which he attempted to dispose of his entire estate. Letters testamentary were issued to John M. Lyon, who qualified and entered upon his duties as sole executor of the estate. He was also appointed on September 23, 1915, and thereupon qualified as sole trustee of the trusts created under the Third and Fourth clauses of the will and has since been acting as such. The trusts having terminated, the trustee has filed his final account for judicial settlement and appropriately seeks a construction of the

will, which was refused by the courts on the final accounting of the executor on the ground that the application was premature (*Matter of Merritt*, 173 App. Div. 473), for the purpose of enabling him legally to distribute the residue and accumulated income of the trust set up in the Third paragraph and to be discharged from further liability as trustee.

At the time the will was made and also at the time of his death, the deceased owned certain personal property, the title to which has not been questioned, and, in addition, assumed to own (1) a farm of 195 acres of land located on the west side of Ridge street in the towns of Rye and Harrison, Westchester county, and known as the " Merritt Homestead," upon which he and his sister lived, and certain other small parcels of real estate, all of the aggregate value of about $200,000, and (2) certain bonds and mortgages aggregating $52,800 in value. The items of real estate had been acquired by Merritt from his sister, Emma E. Merritt, by two deeds, and the bonds and mortgages by nine assignments.

Under the Second clause of his will the deceased directed payment of all of his debts, funeral and testamentary expenses. Under the Third clause of the will a trust of all the rest, residue and remainder of the estate was created for his sister's benefit. In it he included the " Merritt Homestead " farm which he prohibited the trustee " to sell, encumber or mortgage " except that such portions of it might be leased as were not required by or would not interfere with the use of the farm by his sister. He directed that all charges against the property, including the cost of its maintenance and repair and of the maintenance, repair and protection of the buildings thereon, were first to be paid out of income and that the balance of income should be applied " to the maintaining, keeping and supporting my sister, Emma E. Merritt, the necessary servants and help upon the premises where we now reside, during her natural life." On June 3, 1914, a committee of the person and estate of Emma E. Merritt was appointed who thereupon qualified as such committee and took charge of her person

and of her estate. The persons so appointed, with a sub-
stitute for one of the members who died during the com-
mitteeship, continued to act as a committee of her person
and property until her death on February 25, 1936. Making
a wise decision, as the lower courts have held (See *Matter
of Merritt, supra*), the committee refused to accept any
benefits under the will of the brother and no election was
ever made by the sister to take under that will. On the
contrary, actions were instituted by the committee to set
aside the deeds of the real estate and the assignments of the
bonds and mortgages, and final judgment was entered
on December 30, 1914, from which no appeal has been
taken, adjudging that the transfers referred to in (1) and
(2) above were without consideration, fraudulent and
void and procured at a time when Emma E. Merritt was
incompetent, and the transfers were set aside. Thus,
within eight months of the death of the testator his estate
was stripped substantially of all the property which he
assumed to own at the time the will was made. The
committee thereafter, under direction of the court, since
the judgment of December 30, 1914, administered that
property as the property of the incompetent. After those
transfers had been set aside the sole remaining assets in the
estate of Daniel E. Merritt amounted to about $11,000.
(See record on appeal, *Matter of Merritt*, 278 N. Y. 74.)
Thus substantially the entire subject-matter of the trust
for the benefit of Emma E. Merritt was never the
property of the deceased and at no time vested in the trustee
under Daniel Merritt's will, but passed to the adminis-
trators and to the heirs at law and next of kin of Emma E.
Merritt upon her death. Upon the accounting of the
trustee it appeared that income upon the $11,000 estate of
Daniel Merritt remaining in the trust had accumulated in
the hands of the trustee during the lifetime of Emma E.
Merritt and remained in his hands for distribution upon
judicial settlement. This accumulation of income the
administrators of the estate of Emma E. Merritt have
refused to accept, and it constitutes no part of her estate.

The courts below have correctly held that such income became a part of and followed disposition of the corpus of the trust, but erroneously concluded that it should be transferred to the " charity trustees " referred to in the Fifth clause of the will presently to be considered. By the Fourth clause of the will a trust was set up for the benefit of Laura Pierce, to take effect upon the death of Emma E. Merritt, but this gift lapsed through the death of the beneficiary prior to the death of the life beneficiary named in the Third clause of the will.

Under the terms of the Fifth clause of the will the deceased attempted to set up a trust of his entire residuary estate after the death of Emma E. Merritt and Laura Pierce and appointed a board of trustees to administer the trust, consisting of " the president of the Village of Port Chester, the senior Minister or Pastor, by whatsoever name or title he might be known of the following Churches or religious denominations located in the village of Port Chester " in office or holding pastorates at the time of the death of Emma E. Merritt, and of their respective successor or successors in their respective offices, who were directed " to have, hold, retain and keep the same as such for the uses, trusts, intents, purposes and subject to the directions and appointments hereinafter mentioned and declared concerning the same, that is to say:

" 1st. Out of the rents, issues and profits of the said rest, residue and remainder of my said estate, of any kind, character or nature whatsoever and wheresoever located, to plan, lay out and build a public cemetery; which cemetery is to be known as ' The Merritt Public Cemetery,' upon the farm of land upon which I now live on Ridge Street in the Towns of Rye and Harrison, Westchester county, New York, for the purpose of providing plots or places wherein the people of the Village of Port Chester and vicinity may be buried without charge as soon as they, my said charity trustees, or a majority of them shall see fit.

" 2nd. I do hereby direct, that the income of all of my said estate given to my said charity trustees as aforesaid

shall forever thereafter be used and applied for the support of said public cemetery and keeping the same in as good condition as the income thereof may permit, and if necessary, build one or more vaults therein and thereupon, but to keep however, a small burial plot wherein my father and mother and other relatives are buried in a good state of repair and condition and not permit the same to be in any manner disturbed or interfered with. All to be done in such manner as my said charity trustees or a majority of them may from time to time or their successors in office may from time to time direct. And it is my intention that the institution hereby created shall be perpetual, and that the above named officers for the time being, and their successors should forever continue and be the governors thereof, and have the superintendence of the same."

In the fourth subdivision of this clause he declares " it to be my will and intention that the said rest, residue and remainder of my estate should be in all events applied for the uses and purposes above set forth " and that his will should be so construed by the courts that none of " my relations or any other persons should heir, possess, or enjoy my property, except in the manner and for the uses and purposes hereinabove specified." Under the Sixth clause of his will he bars his executors and trustees from leasing, granting, conveying, mortgaging, or otherwise disposing of " The Merritt Public Cemetery " which constituted the " Merritt Homestead " farm.

The courts below have erroneously held that the trust created was a general charitable trust and thereupon, under the *cy pres* doctrine, directed that the property of the estate remaining in the hands of the trustee be transferred to " the so-called charity trustees appointed in said decedent's will " and be used by them " for the purpose of purchasing in some convenient non-sectarian cemetery a burial plot, as extensive in dimensions as the fund will permit, * * * to be used for the purpose of providing free burial accommodations for such of the people of the village of Port Chester and vicinity as may be accommodated therein, on applica-

tion of their proper surviving relatives for such accommodation." There is no room in this case for the application of the *cy pres* doctrine, as will readily appear. (*Saltsman* v. *Greene*, 256 N. Y. 636; *Matter of Fletcher*, 280 N. Y. 86.)

Prior to the adoption of the so-called Tilden Act (Laws of 1893, ch. 701), the English doctrine of trusts for charitable uses as distinguished from private trusts governed by the general rules of law and the doctrine of *cy pres* did not prevail in this State. (*Holland* v. *Alcock*, 108 N. Y. 312; *Tilden* v. *Green*, 130 N. Y. 29.) This statute with subsequent amendments is now embraced in section 12 of the Personal Property Law (Cons. Laws, ch. 41) and section 113 of the Real Property Law (Cons. Laws, ch. 50). By the enactment of those statutes it was the intention of the Legislature to enforce and uphold charitable trusts not theretofore recognized as valid. (*Dammert* v. *Osborn*, 140 N. Y. 30.) It has long been established that an unincorporated association or group is incompetent to take and hold property by devise or bequest. (*Mount* v. *Tuttle*, 183 N. Y. 358.) That rule has not been changed by the provisions of the foregoing statutes. (*Fralick* v. *Lyford*, 107 App. Div. 543; affd., 187 N. Y. 524.) However, if the gift is in trust for a general charitable or benevolent use, it is provided that it may not fail because of any neglect of the testator to name a competent trustee since the title will then vest in the Supreme Court. Still the Supreme Court may act to save a trust only when it is created for a general religious, educational, charitable or benevolent use in cases specifically provided for in the statute.

The first question to be settled is whether the testator created or had an intention to create a trust for a general charitable or benevolent use. · A reading of the will exhibits a clear and unqualifiedly expressed intention on the part of the testator to restrict his gift under the Fifth clause of the will to the planning, laying out, building and subsequent use of a particular property for a particular purpose. He intended and specifically directed that the

" Merritt Homestead," the farm on which he lived, should be forever maintained by his trustees as " The Merritt Public Cemetery," not only for the purpose of maintaining the permanent private burial ground of his own kin and of providing places wherein the people of the village of Port Chester and vicinity might be buried without charge, but as well to perpetuate a monument to himself and his family. He asserted that " *the institution* " to be created on that particular farm should be perpetual. He preserved from sale or encumbrance that particular property during the lifetime of his sister and continued its preservation intact in perpetuity for the particular and specific purpose designated by himself. He directed that the income should be used to keep " the institution " in good condition and to " if necessary build one or more vaults therein and thereupon." The particular farm, in addition to being perpetually maintained for the inclusion, care and maintenance of the private burying ground of the Merritt family, was to be used and maintained, so he specifically said, as a *public cemetery* for free burial for all of the people of Port Chester and vicinity. It was no part of his plan that the gift should be used for the selection and purchase of another spot, other than the farm, for cemetery purposes in some other location or for the selection and maintenance of a plot in some other established cemetery that would accommodate the burial of only a limited portion of the people of Port Chester and vicinity. The purpose and intent of the testator are not left to inference or in doubt. He never intended that the gift should be made or accepted for a general charitable or benevolent use and specifically provided to the contrary in his will. Neither at the time when he made his will nor at the time of his death did the testator own the land which he directed to be converted into a public cemetery. At neither of those times were there nor have there since arisen rents or profits to support any such cemetery. Thus, not only was there no property at any time with which to carry out the limited scheme or plan which, by clear intention and specific direction, the testator laid out in his will, but the amount now left in the corpus of the trust is not nor

was the corpus of the trust ever sufficient to render operative the purpose and intent of the deceased. The court cannot attempt to give the plan effect. (*Matter of Fletcher, supra.*)

There was located on the " Merritt Homestead " farm a burial plot in which members of the Merritt family had been interred. The committee of Emma E. Merritt, by authority of the Supreme Court, after notice to all interested parties in this and in her estate, procured a plot in the Greenwood Union Cemetery in the town of Rye to which a transfer of such bodies was made, and John M. Lyon was named as trustee of " the Merritt family burial plat fund," for which he accounted in this proceeding. He requested that he be permitted to resign as such trustee. The decree below permits of such resignation and appoints a substitute trustee and the use of the fund that has been created for the proper care, preservation and maintenance of the plot in Greenwood Cemetery. This was apparently provided for by consent, and no question is raised concerning that procedure upon this appeal, and so far as the decree of the Surrogate relates thereto it should not be disturbed.

In view of what has been said above it is unnecessary to consider other questions raised upon this appeal which are of substance and would otherwise need consideration. We do not consider or pass on the question as to whether a gift to a public cemetery is a charitable gift.

As to the residuary estate, deceased died intestate. The matter should be remitted to the Surrogate to proceed in accordance with this opinion and to provide for the distribution of the property remaining in the hands of the trustee in accordance with the applicable intestate laws of the State of New York.

The order of the Appellate Division and the decree of the Surrogate's Court should be modified in accordance with this opinion, and, as so modified, affirmed, with costs to appellants appearing and filing briefs payable out of the estate.

CRANE, Ch. J., LEHMAN, HUBBS, LOUGHRAN and FINCH, JJ., concur; O'BRIEN, J., taking no part.

Ordered accordingly.