In the Matter of the Estate of OLIVER YOUNG, Deceased.

Surrogate's Court, Clinton County, August 14, 1939.

*Patrick J. Tierney,* for the executors, Margaret E. Young Reilly and Samuel D. Healey, and executors in person.

*Harold L. Main,* for James W. Campbell, administrator, etc., of Mary A. Campbell, and all children of Mary A. Campbell who are over twenty-one years of age, viz., Edward, Anna, Nora, Allene and Mary Campbell Herrick.    Also for James W. Campbell, individually.

*Boire & Kehoe* [*Victor F. Boire* of counsel], for Harold Young, Jr., and Harold Young, Sr.

*Robert S. Long,* as special guardian for Harold Campbell, James Campbell, Jr., Bernard Campbell and Thomas Campbell.

HARRINGTON, S.    Decedent died on April 18, 1933.    His will was admitted to probate by this court on May 3, 1933.    The inventory of assets of the estate was not filed until July 22, 1936, but was apparently taken on May 24, 1933.    The personal property is appraised at $48,066.57 and real estate at $39,850, making a total appraised value of the estate $87,916.57.    The executors' final account filed on September 2, 1938, shows total receipts of $91,803.03.    The decrease in the inventory value of the assets is in excess of $26,000, and the real and personal property unsold is in excess of $38,000.    Approximately $15,000 has been paid to the legatees.    The total legacies under the will amount to $61,800. Assuming that the real and personal property unsold could be sold for the amount set forth in the account, the net amount of the estate for distribution after the payment of debts, funeral expenses and expenses of administration would be several thousand dollars less than the amount required to pay the legacies in full.    By

reason of such facts this court in this proceeding is asked to construe the provisions of paragraphs second, fifth and sixth of decedent's will to determine whether the trust funds therein mentioned are to be set up in full before payment of the other legacies or whether they are to abate *pro rata* with the other legacies. These paragraphs are as follows:

" *Second.* I give and bequeath in trust to my executors hereinafter named the sum of Ten Thousand Dollars ($10,000) to pay the income thereof to my beloved wife, Josephine Young, during such period as she remains my widow and upon her remarriage or death, the Ten Thousand Dollars ($10,000) to be divided equally between my three (3) children, the share of my son to be added to the trust hereinafter made for his benefit."

" *Fifth.* To my executors and trustees hereinafter named, I give and bequeath the sum of Ten Thousand Dollars ($10,000), but in trust nevertheless, to pay unto my son, Oliver Harold Young, the income thereof and so much of the principal as shall be necessary to make up a monthly sum, which shall be paid him during his life time, of One Hundred Dollars ($100)."

" *Sixth.* To my executors hereinafter named, I give and bequeath the sum of Five Thousand Dollars ($5000), the income thereof and so much of the principal as shall be necessary to be used for the education of my grandson, Harold Francis Young, from his 16th birthday to his 21st, and when he attains his majority the principal of the said Trust Fund shall be paid to him, absolutely."

Paragraphs third and fourth of the will provide for legacies of $10,000 and $25,000 to decedent's daughters Mary A. Campbell and Margaret E. Young, respectively. Paragraph seventh provides for a legacy of $200 each to the children of Mary A. Campbell, of which there were nine. The residuary estate is bequeathed to the decedent's three children, Mary A. Campbell, Margaret E. Young and Oliver Harold Young. This paragraph directs that the provisions therein made for his wife are in lieu of her dower rights, that the executors " shall have five (5) years to settle my estate, but shall provide for the trusts, particularly that of my wife, as soon as possible * * *. Should there remain any of the trust fund made for the benefit of my son when he dies, I give and bequeath the same to his children, if any survive, of him, if not, I give the same to my daughters."

Testimony was given by decedent's daughter Margaret E. Young Reilly, and his grandson Harold Francis Young, with respect to the relationship of the decedent to the members of his family at the time of the execution of his will in 1924 and for some years prior thereto. The attorney who drafted the will also testified with respect to the conversations had by him with the decedent in

connection with the preparation of the will. It is proper in determining the intent of the testator to consider the circumstances known to him when the will was made as well as the language used by him in the will itself. (*Matter of Neil*, 238 N. Y. 138, 140. See, also, *Matter of Smith*, 254 id. 283, 289.) Counsel who drafted the decedent's will testified that the decedent expressed special concern about his son Oliver Harold Young; that he had caused him considerable worry; that he could not keep a job with any one; that he desired to provide a trust fund for the support of his son and his family. He also expressed his desire to provide a trust fund that would insure the education of his grandson Harold Francis Young. He particularly desired that these trust funds be set up immediately. It appears from the testimony of Margaret E. Young Reilly that the decedent for many years operated a small hotel and several cottages on Chateaugay lake; that he also had operated farm lands and dealt in real estate. Decedent's son had worked for most of his life with his father in doing various manual labor but never assisted in his office work or financial matters. These latter matters were handled by his daughter. While no preference was ever expressed of one child over another, the evidence indicated that during his lifetime he had given his daughter Mary A. Campbell a farm of the approximate value of $20,000, and his daughter Margaret E. Young a cottage of the approximate value of $5,000. He had also assisted his said son many times in financial matters. He had even financed him a garage business at one time but the son was unable to continue it successfully. The son had no financial resources except such as he had received from his father. He usually received $100 per month for his services. The son and grandson of the decedent were respectively forty-one and fourteen years of age at the time of his decease. The son had received little education, having left school at the age of thirteen. The grandson had received three years of high school. Both of decedent's daughters had taken a teacher's training course. Decedent's wife had a few thousand dollars which was received by her from her sister's estate. She had never received any substantial sum from the decedent. It appears that the grandson, prior to becoming twenty-one years of age, requested the executors to advance him $2,000 for a two-year aviation course but the executors refused to do so. He received $500 of the principal of the trust fund for his benefit prior to reaching twenty-one years of age and $800 thereafter. He had no other means of securing funds for his education.

The testimony above mentioned would seem to corroborate the intent of the testator as expressed in the paragraphs of his will above quoted. His wife, his son and his grandson were apparently

his first concern. He had provided in his lifetime for his two daughters, as hereinabove mentioned. Presumably, the inequality of such provisions for them at that time accounts for the difference in the bequests to them in his will. Such surrounding circumstances known to the decedent at the time of the execution of his will, coupled with the direction in the residuary clause that these trust funds, particularly that for his wife, should be provided as soon as possible, indicate an intent that these trust funds should receive preference to the other provisions of the will. While the direction in the residuary clause to set up these trust funds as soon as possible is not alone sufficient to indicate such an intent, it is a material circumstance to be weighed in considering the general intent to prefer, asserted to have been in the mind of the testator. (*Matter of Lloyd,* 166 App. Div. 1, 4, 5.) The general rule is that where an estate is not sufficient to pay in full all of the general legacies the same shall abate *pro rata* unless there is an expressed indication that the testator intended otherwise. An exception to this rule is that where the legacy is given for the support, education or maintenance of a near relative not otherwise provided for, it will be preferred. (*Matter of Neil, supra; Matter of Cameron,* 278 N. Y. 352, 358.) The trust funds for decedent's widow and son are clearly for their support and maintenance and that for the grandson is for his education. As such they would seem to clearly be within the exception to the general rule above stated. The trust fund for the widow also falls within another exception to such rule that where a legacy to a widow is given in lieu of dower, it is entitled to preference on the ground that she takes as a purchaser. (*Matter of Cameron, supra.*) I am, therefore, of the opinion that the trust funds provided in the paragraphs of decedent's will, as above quoted, should receive preference over all other legacies in the will and should be set up in full before the payment of other legacies.

With respect to the trust fund for decedent's grandson, it is urged that in view of the fact that such trust fund was not set up for him prior to his reaching twenty-one years of age, only such part thereof should be preferred as was paid to him prior to such date; that the balance of the trust fund directed to be paid to him should abate *pro rata* with the other legacies. I cannot agree with this contention. The intention of the testator became effective upon the probate of his will. Delay in the proceeding to have it construed cannot change the intent of the testator to be declared by this court. Furthermore, there is nothing about the language creating the trust fund for decedent's grandson to indicate that his education was to cease upon his twenty-first birthday. It is more logical to assume that from such date the control of the trust fund, either for his education or other purposes, was to be in charge

of the grandson rather than the trustees under decedent's will. Accordingly, the grandson is entitled to receive from the executors of the estate the full amount of such trust fund, less any principal advancements heretofore made to him.

Will a preference inure for the benefit of any of the remaindermen with respect to the trust funds mentioned in paragraphs " second " and " fifth " of decedent's will, as above mentioned? Upon the death of decedent's widow, the remainder of the trust fund is directed to be divided equally between decedent's three children, as mentioned in the will, " the share of my son to be added to the trust hereinafter made for his benefit." Counsel for decedent's son urges that his share of such remainder should be preferred by reason of the fact that the provisions of paragraph " fifth " of decedent's will for the benefit of his son are such as will exhaust the principal of the trust fund prior to the normal expectancy of the son's life; that decedent must have intended that the share which his son would receive from the remainder of the trust fund provided for the widow would augment the trust fund provided for the son; that such intent is evidenced by the direction above quoted that the share of the son in such remainder of the trust fund established for the widow be added to the trust fund created for the benefit of the son. The trust fund provided for the son in paragraph " fifth " of the will is given preference over the other general legacies by reason of the fact that it is given for the support and maintenance of a son, and as such falls within the exception to the rule that legacies must abate *pro rata*. I believe the language in paragraph " second " of the will, as last above quoted, is sufficient to indicate an intent on the part of the testator that the son's interest in the remainder of the trust fund therein shall be preferred to the general legacies mentioned in the will. I am, therefore, of the opinion that upon the decease of decedent's widow, Josephine Young, the remainder of the trust fund provided for her in paragraph " second " of the will should be disposed of as follows:

If decedent's son Oliver Harold Young is then living, one-third thereof should be added to the principal of the trust fund described in paragraph " fifth " of the will and the remaining two-thirds thereof, after abating *pro rata* with the general legacies mentioned in the will, should be distributed to the decedent's other two children. If decedent's son Oliver Harold Young does not survive decedent's widow, then the entire remainder of the trust fund mentioned in paragraph " second " of the will, after abating *pro rata* with the other general legacies in the will, should be distributed to decedent's two daughters and the children of decedent's son, if any survive him, and if not then solely to decedent's daughters, as provided in paragraph " eighth " of the will.

With respect to paragraph " fifth " of the will, if any remainder exists of the trust fund therein mentioned upon the decease of decedent's son Oliver Harold Young, then I believe the same should first abate *pro rata* with the other general legacies mentioned in the will and then be distributed to the children of the said Oliver Harold Young and if none survive him, to decedent's daughters, as mentioned in paragraph " eighth " of the will. In this case there is no expressed intent of the decedent that any remainder of such trust fund should be preferred in payment to any of those entitled thereto under paragraph " eighth " of the will. The basis for giving preference to the payment of the trust fund to decedent's grandson, as mentioned in paragraph " sixth " of the will, over the general legacies is because it is a gift for the education of a near relative of the decedent, otherwise unprovided for and, therefore, within one of the three exceptions to the rule that legacies must abate *pro rata*. Such rule, however, cannot be invoked on behalf of decedent's grandson mentioned in paragraph " sixth," of the will with respect to any remainder of the trust fund to which he may eventually be entitled under paragraph " fifth " of the will for the very reason that by the receipt by him of the trust fund mentioned in paragraph " sixth " of the will, he cannot thereafter urge as against the decedent that he has been " otherwise unprovided for." (*Matter of Cameron, supra; Matter of Trimbey,* 152 Misc. 344, 347.)

Counsel for Nora Campbell, one of the children of Mary A. Campbell, deceased, objects to the inclusion in the assets of the estate of an alleged indebtedness of $200 to the estate from Nora Campbell, one of decedent's granddaughters. A canceled check of the decedent, payable to his granddaughter, in the sum of $200 and indorsed by her, was offered in evidence by the executors to indicate such advancement by the decedent. Decedent's daughter Margaret E. Young Reilly testified that this sum was advanced as a loan by the decedent to his granddaughter to assist her in the course of her education and with the understanding that she was to work for the decedent the following summer; that she did not so work for him. Counsel for the granddaughter urges that such advancement was a gift but introduced no proper proof in support thereof. I am satisfied that in this proceeding this court has no authority under section 40 of the Surrogate's Court Act to pass upon this matter. The courts have held that the Surrogate's Court has no jurisdiction to direct the payment of a debt or to direct judgment for any debt due an estate. (*Matter of Jastrzewski,* 252 App. Div. 384; *Matter of Hammer,* 237 id. 497; affd., 261 N. Y. 677; *Matter of Arduini,* 243 App. Div. 10; *Matter of Thomas,* 235 id. 450.)

Prepare decree accordingly.