Ringrose, J.
John L. Heffron died a resident of the City of Syracuse, New York, on the 28th day of September, 1924, leaving a last will and testament which was admitted to probate by the Surrogate’s Court of Onondaga County on the 16th day of October, 1924. Letters testamentary were issued to the named executors, John M. Heffron, a son of the testator, and Edmund H. Lewis, a nephew, the latter of whom survives.
The testator was survived by his widow, Marie A. Heffron; his son above named; and two daughters, Marie Heffron Porter and Emily Heffron Sisson.
The sum of $10,000 was bequeathed to Syracuse University by the tenth paragraph of the will, which reads: ‘‘ tenth. I give and bequeath to Syracuse University, provided that within one year after my death the Medical College thereof shall be assured of permanency and of support adequate to keep the same forever in the rank of ‘ Class A ’ medical schools as now classified by the Council on Education of The American Medical Association, and expressed by a written statement to that effect signed by the President and Secretary of the Board of Trustees of said University, Ten thousand Dollars ($10,000) or that portion of that amount left after the above bequests are satisfied, to be known as the Roger Williams Pease Memorial Fund, the interest on which shall be paid toward the support of the College of Medicine of said University.”
The bequest was accepted by Syracuse University and administered through the academic year of 1949-1950.
The operation of the medical college had resulted in mounting deficits for the preceding four or five years and it was determined by the trustees of Syracuse University that it was no longer feasible or financially possible to continue the medical *448 college as an institution of Syracuse University. Thereupon the trustees, pursuant to a resolution duly adopted, negotiated an agreement with the trustees of State University for the conveyance of the realty and the transfer of the equipment used in connection with the operation of the College of Medicine of Syracuse University to State University to be integrated with the proposed State Health and Medical Center of Syracuse, which had been authorized by appropriate legislation in 1948. (Education Law, § 354, subd. 2; L. 1948, ch. 695.)
The aforesaid agreement provided in respect to endowment funds attributable to the college of medicine as follows :
‘‘ ARTICLE III-ENDOWMENT FUNDS ATTRIBUTABLE TO THE COLLEGE OF MEDICINE
“ III.1. The provisions of this article shall be effective only in the event State University acquires the College of Medicine as provided for in Article II hereof.
“ III.2. ‘ Exhibit B ’ attached hereto and made a part hereof, and identified by the signatures of the parties as the summary statement referred to in this section, is a summary statement of the endowment funds attributable to the College of Medicine, held by Syracuse University, listing the amounts of principal and undistributed income in such funds as of January 1, 1950. Syracuse University warrants that to its best knowledge and belief ‘ Exhibit B ’ contains all the endowment funds held by it which are attributable to the College of Medicine. ‘ Exhibit B ’ classifies such endowment funds into four main categories, as follows:
* * *
“ (b) Endowment funds, the income of which Syracuse University agrees to pay to State University for Medical Center purposes, only upon court authorization. It is agreed that these endowment funds generally consist of gifts or bequests to the College of Medicine in name or in purpose, the use of only the income of which is permitted by the instruments creating them.
* * *
“(c) Endowment funds, the principal and income of which Syracuse University agrees to pay to State University for Medical Center purposes, only upon court authorization. It is agreed that these endowment funds generally consist of gifts or bequests to the College of Medicine in name or in purpose, the use of the principal and interest of which is directed by the instruments creating them.
“ III.3. With respect to the endowment funds specified in classifications (b) and (c) of ‘ Exhibit B \ Syracuse University *449 will make application to a court of competent jurisdiction for an order or orders directing that the income of each particular fund, and the principal thereof where the use of principal is directed by the instrument creating the fund, be expended, as long as the Medical Center is located adjacent to the campus of Syracuse University, for a purpose or purposes of the Medical Center which in the judgment of the court will most effectively accomplish the general purpose of the instrument creating each such fund. It is agreed that the sub-classifications of such funds under classifications (b) and (c) of ‘ Exhibit B ’ denote the purposes for which such income and/or principal should be devoted to best effectuate the desires of the grantors of such funds. Syracuse University will prosecute such proceedings to a conclusion with reasonable diligence and State University agrees to cooperate with Syracuse University in the presentation and prosecution of such application or applications. During the pendency of such proceedings, Syracuse University will keep the principal of such funds intact and will accumulate the income therefrom. In cases where the donor is living the consent of the donor shall be a condition precedent to the making of such application. Syracuse University and State University agree to cooperate in procuring such consent. It is agreed that such order or orders shall, if the court approves, contain a provision that the use of income for the Medical Center shall cease and terminate if the Medical Center ceases to be located adjacent to the campus of Syracuse University.”
Pursuant to the aforesaid agreement (art. III.3) Syracuse University brought this cy pres proceeding under section 12 of the Personal Property Law for permission to pay over the income from the bequest contained in the “ tenth ” paragraph of the Avill of John L. Heffron to State University of New York, so long as the State University Medical Center is located adjacent to the campus of Syracuse University, the income to be used by the medical center for a purpose which will most effectively accomplish the general purpose of the testator. It is the contention of the petitioner that the language of the bequest manifests a general benevolent purpose which warrants the application of the doctrine of cy pres to the disposition of the income according to the terms of the agreement above mentioned.
The Attorney-General and State University join in the relief sought by the petitioner.
The application is opposed by the executor of the last 'will and testament of John L. Heffron, deceased, on the ground that *450 the language of the tenth paragraph of the will limits the use of the income from the bequest for the support of the Medical College of Syracuse University, which became nonexistent upon the transfer thereof to State University, resulting in the lapse of the bequest as of that date and a resulting trust in favor of the heirs and next of kin of the testator.
The law is firmly established that the doctrine of cy pres may be applied to save a bequest or gift of a charitable nature if there may be attributed to the donor or testator a general charitable intention. (Matter of Potter, 307 N. Y. 504; Matter of Pattberg, 282 App. Div. 770, affd. 306 N. Y. 835; Matter of Robinson, 203 N. Y. 380; Fisch, The Cy Pres Doctrine in the United States.)
It is evident, however, from an examination of the applicable case law and statutes that, as yet, the policy of this State has not been declared as vesting in the Supreme Court, jurisdiction to administer every bequest or gift of a charitable nature which fails of the particular purpose for which it was made. (Saltsman v. Greene, 136 Misc. 497, affd. 231 App. Div. 781, 232 App. Div. 716, affd. 256 N. Y. 636; Matter of Merritt, 280 N. Y. 391, 399; Matter of O’Hanlon, 147 Misc. 546; Matter of Jones, 201 Misc. 881, 882; Matter of Koons, 206 Misc. 856; Matter of Lewis, 308 N. Y. 795, revg. 278 App. Div. 888 and affg. the Surrogate.)
The manifestation in the instrument of gift of a general charitable intention as a prerequisite to the administration of the bequest cy pres for a benevolent purpose is recognized also by the majority of text writers on the subject. (4 Pomeroy on Equity Jurisprudence [5th ed.], § 1027; 3 Page on Wills, § 1241, p. 613; 3 Scott on Trusts, § 399; 10 Am. Jur., Charities, § 127.)
The distinction between a specific and a general charitable use was noted by Surrogate Sterley in Matter of Koons (206 Misc. 856, 859, supra), as follows: “ If a person desires to leave a fund for the support of a particular school, he may do so with either of one or two general attitudes of mind. He may have in his thought the extension of education and the dissemination of knowledge as his primary objective, and then he may cast about for the means of accomplishing this general education charitable intent and select a named school as an instrument. Here the choice of the school is secondary and incidental. It is not a vital choice with the settlor. On the other hand, the settlor may be fundamentally interested in a certain school and leave money in trust to advance and support that school. It seems in that case that his desire may be merely to help this particular educational institution and that he has no interest *451 in education in general or in any other scheme for extending educational advantages. "Where the intent has been narrow and exclusive the courts have felt that they would not be justified in ordering the trust or changing the application of the fund. They have believed themselves compelled to return the property to the settlor or his successors under a resulting trust, when the express trust for charity has failed for any reason.”
Paraphrasing the tenth clause of the will without change in context, it reads: “ I give and bequeath to Syracuse University, Ten Thousand Dollars ($10,000.) to be known as the Roger Williams Pease Memorial Fund, the interest on which shall be paid toward the support of the College of Medicine of said (Syracuse) University.” It would be difficult to phrase the gift clause of the will more precisely or unequivocally.
In testamentary construction, the thought proclaimed provides the guide to intention. The courts may not resort to the processes of construction to impute a testamentary purpose undisclosed by the testator, or one which legitimately may not be implied from the language used. Reference to this general rule appears as a quotation in Matter of Silsby (229 N. Y. 396, 402): “ ‘ In construing a will it has been repeatedly held that the object of the courts is to ascertain, not the intention simply, but the expressed intention, of the testator, i. e., the intention which the will itself, either expressly or by implication, declares. In other words, it is the duty of the court to ascertain the intention of the testator from the words he has used, and to ascertain and give effect to the legal consequences of that intention when ascertained.’ ” (Also: Matter of Buechner, 226 N. Y. 440, 444; Matter of Buttner, 243 N. Y. 1; Matter of Gallien, 247 N. Y. 195, 200.)
The plain reading of the tenth paragraph of the testator’s will manifests an intention to benefit a specific educational institution or department of Syracuse University. This court under the guise of construing may not impute to the testator an undisclosed intention in the interest of perpetuating the bequest for educational purposes.
The interpretation of the paragraph of the will in question as above indicated precludes the application of the doctrine of cy pres. (Saltsman v. Greene, 136 Misc. 497, affd. 231 App. Div. 781, 232 App. Div. 716, affd. 256 N. Y. 636, supra; Matter of Merritt, 280 N. Y. 391, supra; Matter of O’Hanlon, 147 Misc. 546, supra; Matter of Jones, 201 Misc. 881, supra; Bancroft v. Maine Sanitorium Assn., 119 Me. 56; Matter of Gault, 48 N. Y. S. 2d 928, 930.)
*452 The case of Saltsman v. Greene (supra) involved a bequest in trust, the income from which was to be used for the repairs of the building and to beautify the grounds of the Baptist Church in the village of Virgil, Cortland County. The church disbanded and its assets were taken over by the Baptist Missionary Convention of the State. The fund was claimed by the First Methodist Episcopal Church of Virgil on the ground that the will manifested a general benevolent intention. The court in denying the application held that the bequest was limited by the testator to a specific purpose which had been rendered impossible of performance by the discontinuance of the church. Rejection of the doctrine of cy pres to perpetuate the gift was required by the failure of the specific purpose for which it was made.
Especially pertinent on the question presently before the court, is the reasoning of Justice Rhodes in the Saltsman case, as follows (supra, p. 499): “ Here, the income from the trust fund is to be expended in ‘ repairing and beautifying the building, sheds and grounds of the Baptist Church at the Village of Virgil, commonly known as the First Baptist Church of Virgil. But no part of said income shall be used to pay salary of any minister. ’ Apparently the purpose of said trust has now wholly failed. The will, by its terms, does not indicate any other general purpose to which the property is to be devoted and any construction providing for the turning over of the property, either to the defendants the First Methodist Episcopal Church or the Baptist Missionary Convention, would, in my opinion, require the court, in so far as said property is concerned, to make an entirely new will for the testator not founded upon any intent evidenced by him in his will, nor in accordance with any direction contained therein. Whether or not the testator intended the charitable trust to be continued, I do not think he has evidenced any such intent by the language of his will. Any direction on the part of the court as sought by the defendant societies would be without the aid of any testamentary intent pointing in that direction. Under the circumstances I do not think the court should attempt to make a new testamentary disposition for the decedent concerning such property. ’ ’
The rationale of the decision in the Saltsman case was concisely stated by Justice Edgcomb in writing for the Appellate Court in Matter of Swan (237 App. Div. 454, 461), as follows: “ Inasmuch as the Virgil Church had ceased to exist, and as there was nothing in the will to indicate that the testator *453 intended that the money should be used for any purpose other than the one specified in the will, the court refused to apply the cy pres doctrine. The trust had absolutely failed. Not so here.”
The Saltsman case was cited in support of the decision in Matter of Merritt (280 N. Y. 391, supra), which contains this significant observation in reference to the doctrine of cy pres which is especially pertinent on the pending issue. Said the court (p. 400): “ The purpose and intent of the testator are not left to inference or in doubt. He never intended that the gift should be made or accepted for a general charitable or benevolent use and specifically provided to the contrary in his will.”
It is the contention of the petitioner that once the gift took effect, the testator intended it should continue as a permanent endowment for the benefit of medical education. Certainly the words expressive of the bequest fail to specify such an intention and the factual background of the testator’s professional life refutes the inference.
The bequest was restricted to the support of the College of Medicine of Syracuse University from which he graduated in the year 1881. Thereafter he continued his studies for approximately a year in Vienna and Heidelberg, and upon his return practiced his profession in the city of Syracuse until his death in 1924 at the age of 73 years. He served the College of Medicine of Syracuse University as a member of the faculty for 25 years and as Dean for 15 years.
During the early years of his connection with the College of Medicine, Doctor Heffron worked with and under the direction of Doctor Roger Williams Pease, a prominent surgeon who served as professor of clinical surgery in the College of Medicine from its founding until his death in 1886. The esteem and affection held by the testator for Dr. Pease, in honor of whose memory this bequest was made, is amply demonstrated by a passage from a brochure prepared and published by the testator in connection with the golden jubilee of Syracuse University, entitled “ Fifty Years of the College of Medicine.” It reads: “ Of Dr. Roger Williams Pease it is difficult for me to speak calmly. He was both father and brother to me. I treasure his friendship as the richest experience of my life. * * * As a surgeon he was a diagnostician of unusual keenness, and an operator whose exquisite skill I never saw equaled in any clinic in any medical center.”
The facts of an historical nature above related demonstrate beyond peradventure that the bequest in controversy was moti *454 vated by a deep sense of loyalty, reverence and affection for the College of Medicine of Syracuse University and intended to benefit that institution exclusively.
However, I do not deem evidence extrinsic of the will essential to sustain the conclusion herein, as any attempt to graft an intention favoring the support of medical education generally would be abortive of the plain purpose of the bequest as expressed in the words of the testator.
The fact that the present trust had been administered for a period of years in accordance with the terms of the will furnishes no persuasive consideration in favor of a forced construction imputing a general charitable and benevolent intent to the testator as urged on behalf of the petitioner. While this factor appears to have received consideration in other jurisdictions (Stratton v. Physio-Medical College, 149 Mass. 505, 508), I do not find it has been recognized in this jurisdiction as persuasive in the interpretation of a testator’s intention, and is certainly extrinsic of the will. Moreover, from an examination of the record on appeal in the Saltsman case (supra) it appears that the trust therein created had been administered for upwards of 25 years before the church was discontinued. From an examination of the record on appeal it appears that the same argument was advanced in favor of perpetuating the trust for charitable purposes and rejected by the court.
It is argued that the College of Medicine of Syracuse University is the same institution as the State University Medical Center at Syracuse operated by State University of the State of New York. The former depended in part, at least, on eleemosynary donations and gifts from individuals, foundations and other similar sources and was privately controlled. The support of the latter is provided by taxation and the inference that the testator intended to ameliorate the tax burden of the People of the State of New York is wholly unwarranted. (Matter of O’Hanlon, 147 Misc. 546, 549, supra.) Moreover, the personnel of its management and faculty is subject to changing political control, a factor not previously present in the operation of the College of Medicine of Syracuse University.
The College of Medicine of Syracuse University having ceased to exist on June 1,1950, resulted in a lapse of the bequest contained in the tenth paragraph of the will of the testator and operated to invoke the doctrine of resulting trust in favor of the residuary legatee, the corpus and income accumulated since the date of the transfer of the College of Medicine to State University payable to the surviving executor of the last will *455 and testament of John L. Heffron, deceased, for distribution in an appropriate accounting proceeding in the Surrogate’s Court of Onondaga County.
An analysis of the numerous authorities cited in support of a construction imputing to the testator a general benevolent intention, is omitted in the interest of brevity. These were examined and many of them cited in a similar proceeding in Matter of Hendricks (1 Misc 2d 904).
The motion by the Attorney-General in which the State University joined, made at the opening of the trial and again at the close of the evidence, to dismiss the answer and petition of Edmund H. Lewis, as sole surviving executor of the estate of John L. Heffron, deceased, is denied.
The foregoing are the facts found and constitute the decision of the court as required by section 440 of the Civil Practice Act.
Judgment accordingly, without costs in favor of either party as against the other.