S. Samuel Di Falco, S.
The provisions of the will in .this construction proceeding having been set forth at length in Surrogate O’Brien’s decision in this matter (130 Misc. 339) repetition is unnecessary herein.
The death in 1959 of the widow, life beneficiary of testamentary trusts established by this will, construed in part in 1927 by one of this court’s predecessors, now raises additional questions requiring determination, so that funds in the hands of the trustee, petitioner in this accounting proceeding, may be distributed.
These rulings are made with respect .to the problems presented:
The bequests to Actors Equity Association, an unincorporated association under articles Fifth, Seventh and Fourteenth of the will must fail. In its present state the association is not qualified to take this bequest. This the association admits, but asks the court to invoke its cy pres power and direct that the gifts be paid to two libraries which maintain theatrical collections, used by its members. This will indicates that the testator, a noted Shakespearian actor, early in this century, bequeathed the fund to Actors Equity Association ‘ ‘ with the request that the income be devoted to the interests of their library ’ ’ with the suggestion that a plaque be placed commemorating his memory. There is in this will no general charitable intent, but rather an intent on the part of the testator to favor specific organizations of which he was a member or was in some way previously associated, with a direction that the funds be used for a specific purpose. To this situation the court cannot apply the cy pres doctrine and the invalid gifts to Actors Equity Association must lapse. (Mount v. Tuttle, 183 N. Y. 358; Matter of Merritt, 280 N. Y. 391; Wright v. Wright, 225 N. Y. 329; Matter of Lawless, 194 Misc. 844, affd. 277 App. Div. 1045, motion for leave to appeal denied 302 N. Y. 949; Matter of Scott, 8 N Y 2d 419.)
It appears that there does not now exist nor has there ever been an institution known as “ The National Memorial Theatre of Stratford-on-Avon, England” to which the decedent bequeathed one half of the remainder of the trust for the benefit of his widow for the purpose of promoting performances and productions of Shakespearian drama. There has existed by Boyal Charter since 1875 The Boyal Shakespeare Theatre Stratford-Upon-Avon which maintains a theatre for the produc *1031 tion of Shakespearian drama. It was incorporated originally as The Shakespeare Memorial Theatre and had its name changed later to The Shakespeare Memorial Theatre Stratford-UponAvon and is now known as The Boyal Shakespeare Theatre Stratford-Upon-Avon. These facts are set forth in the affidavit of its chairman and are before the court as extrinsic evidence in aid of construction pursuant to stipulation. (Matter of Hodges, 26 Misc 2d 771.) This theatre is universally regarded as the national memorial to William Shakespeare. The remainder, pursuant to article Eighth, will be paid to the Boyal Shakespeare Theatre Stratford-Upon-Avon, England. It is clear that the legacy was intended for it and this gift will not be defeated because of misnomer (Kernochan v. Farmers’ Loan & Trust Co., 187 App. Div. 668, affd. 227 N. Y. 658).
The Actors’ Fund of the City of New York is bequeathed a share of the paragraph Seventh trust, for the establishment of the Hackett Endowment Fund with the direction:
“that the rents, issues and profits thereof be applied as follows:
“ I request and direct that the income from this Fund, which shall be known as the hackett endowment fund, shall be divided equally among the guests of the Actors’ Home, now situated in Staten Island, New York, and be given to them as far as practicable at such times as they may desire, to be used by them in any way that they may see fit. I wish that to be given as if it were with my personal compliments to the guests of the Home, and not to be merged with any other bequests that may have been made, or may be made in the future. It is my further request, that this Fund shall not cause any reduction of other allowances that may have been made of a similar nature, or for a similar purpose, between now and the time of this bequest, or thereafter, but should be in addition, and apart from, any existing allowance made at the time.”
It has been stipulated that the Actors’ Fund of America maintained a home for aged and indigent members of the theatrical profession on Staten Island, New York, until 1929 when it moved the home to Englewood, New Jersey, where it has been continuously maintained since that time and is presently maintained there. This legatee argues that its gift is a preferred legacy which is not to be shared equally with general legacies and is not subject to abatement. In support of this contention this respondent cites Matter of Cameron (278 N. Y. 352), claiming that the legacy of the remainder is preferred because it is payable out of a specific or earmarked fund, The respondent urges *1032 that it is to enjoy the same preference afforded to the life beneficiaries by the decree of Surrogate 0 ’Bkieh herein dated October 18, 1927 to the effect that the aforesaid trust fund for the benefit of the testator’s widow and daughter was a preferred bequest to be paid before general legacies. The Surrogate’s decision on the prior construction herein makes reference only to the interests of the wife and daughter, the natural objects of the testator’s bounty.
In paragraph Eleventh (d) of that decree Surrogate O’Bbien adjudged: “ As to such matters as are not in this decree specifically determined, further instructions may be applied for.” This court is of the opinion that there is no explicit expression nor can one be implied that this particular respondent be favored in any way above other charities who are the recipients of general legacies. In Matter of Graves (143 N. Y. S. 2d 724, 727) it said: “ ‘ Equality is the rule and preference is the exception. ’ In these words the courts of this state have repeatedly expressed the guiding principle of construction where a decedent’s estate is insufficient to make payment in full of all the legacies provided for by the decedent. The courts have further specified three types of general legacies which are excepted from the operation of this rule, namely, (1) one given for the maintenance and support of a near relative otherwise unprovided for; (2) one given to a widow in lieu of dower; and (3) one given for a valid consideration. For no preference attaches to the gift of the remainder of a trust fund merely by reason of the fact that the gift of the income was preferred. Matter of Cameron’s Estate, supra; Matter of Young’s Estate, 171 Misc. 947, 952,14 N. Y. S. 2d 773, 778; Matter of Clark’s Estate, 166 Misc. 909, 919, 3 N. Y. S. 2d 364, 374; Matter of Ward’s Estate, 165 Misc. 165, 168, 300 N. Y. S. 826, 832; Matter of Brundage’s Estate, 163 Misc. 1, 3, 4, 296 N. Y. S. 57, 60, 61.” Accordingly, the legacy to the Actors’ Fund of the City of New York is payable to the Actors’ Fund of America and will abate in the same manner as other charitable legacies in accordance with the decree dated October 18,1927. It should be noted that sometime in the future an inter vivos trust created by the decedent for the life of one Madelaine A. Clancy will terminate, and that it will fall into the residuary estate and more than sufficient funds will be available to satisfy all legacies which abate at this time. Upon payment of the legacy to it, the Actors’ Fund of America may apply the income of the fund for the purpose of maintaining its home for the aged and indigent.
*1033 The gifts to the “ Board of Education of the .State of New York ” will be paid to the Board of Education of the City of New York. The gift to “ The Lambs Club” will be paid to The Lambs, a New York corporation situated at 128 West 44th Street, New York, New York.
The daughter of the testator asks the court to construe the will at this time insofar as it relates to the distribution of the residuary estate. It is contended that there is intestacy as to part of the funds distributable at this time. All parties concede that there are insufficient moneys presently available to satisfy the debts of the estate, preferred and general legacies. To allocate any funds to the residuary now, would not only be contrary to law, but violate the principles guiding the sound administration of estates. It is fundamental that general legacies are paid before residuary bequests (Matter of Title Guar. & Trust Co., 195 N. Y. 339; Matter of Crouse, 244 N. Y. 400). Since there is an abatement of the general legacies, it follows that there is no residuary estate at this time and until there is such a fund, the court will not decide any question of intestacy. The question at this time is academic (Matter of Mount, 185 N. Y. 162).
As modified by this decision insofar as the $11,542.03 due to the Actors Equity Association, which lapses and is available for debts and general legacies, the allocations and preferences as to the funds on hand set forth in the petition are approved by the court and distribution will be made accordingly. The interest earned on the funds since the date of death of the life tenant is to be paid ratably to the remaindermen.