In the Matter of the Estate of CORNELIA C. WADSWORTH, Deceased.

Surrogate's Court, Jefferson County, January 7, 1932.

*Purcell, Cullen & Reynolds,* for the Northern New York Trust Company, the executor.

*Arthur L. Cohen* for Fred W. Bushnell and others, contestants.

*Giles & Fuller,* for Lena Leventon, contestant.

*Crandall F. Phillips,* special guardian for Cora Bushnell, a minor.

GRANT, S. Cornelia C. Wadsworth died September 10, 1930. She left a paper purporting to be her last will and testament, bearing date February 5, 1930, naming the Northern New York Trust Company executor, and disposing of her property as follows:

" *First.* I direct the payment of my just debts and funeral expenses, which funeral expenses shall not exceed the sum of five hundred dollars ($500.00), but should approximately reach that amount.

" *Second.* I give and bequeath to my sister, Julia Bushnell, of the City of Watertown, N. Y., the sum of two hundred dollars ($200.00).

" *Third.* I give and bequeath to my sister, Mrs. Carrie Yerden, of the City of Watertown, N. Y., the sum of one hundred dollars ($100.00) and all my wearing apparel except my fur coat.

" *Fourth.* I give and bequeath to my niece, Cora Bushnell, of the City of Watertown, N. Y., the sum of one hundred dollars ($100.00), my fur coat, my beads, rings and gold watch, and other jewelry, if any.

" *Fifth.* All the rest, residue and remainder of my property and estate I give and bequeath to the American Red Cross Society, with branch at the City of Watertown, N. Y., in trust, and direct the said branch of the said Red Cross Society of America to pay over and distribute the same for the relief and alleviation of the suffering children of the Near East from time to time and in accordance with the judgment of the officer or officers having charge of that branch of the business of the said Red Cross, but the whole thereof shall be so paid within one year after my death.

" *Sixth.* I have intentionally omitted to make any gift or provision for any one of my six brothers and my sister Mrs. Agnes Green.

" *Seventh.* My estate at the present time is a personal estate only, as I have no real property."

The decedent left her surviving as her only distributees George Bushnell, Henry Bushnell, Fred Bushnell, Theodore Bushnell, Julia Bushnell, Carrie Yerden, Louis Bushaw (Bushnell) and Agnes Green, her brothers and sisters, Lena Leventon, a niece, and Wilbur Wadsworth and Fred Wadsworth, nephews.

A petition for the probate of the said instrument as the last will

and testament of decedent was filed, and the citation and supplemental citation issued thereon were served on the persons entitled to be cited in said proceeding. Objections to the probate of said instrument were filed by said George Bushnell, Henry Bushnell, Fred Bushnell, Theodore Bushnell, Julia Bushnell, Carrie Yerden, Wilbur Wadsworth and Lena Leventon, and trial by jury of the issues raised thereby was demanded. Said objections are still pending. It is claimed in and by them that decedent did not have testamentary capacity at the time said instrument was executed; that said instrument was not freely or voluntarily made or executed by her as her last will and testament; that it was not her own free act and deed but was induced by some person or persons acting in concert or privity with her and was procured through fraud and undue influence; that the will was invalid, illegal and void " in that it attempts to dispose of all the property of the decedent, both real and personal to an eleemosynary institution contrary to the statutes." The provisions of sections 146 and 148 of the Surrogate's Court Act have been complied with. A special guardian has been appointed to represent and protect the interest of Cora Bushnell, infant legatee.

All of the distributees, the special guardian for the infant legatee, the executor named in said instrument, the American National Red Cross, the trustee named in paragraph 7th of said instrument, by John Barton Payne, its chairman, and the Jefferson Chapter of the American National Red Cross, referred to in said paragraph 7th, by Sidney S. McCumber, its treasurer, have made, executed and filed an agreement pursuant to section 19 of the Decedent Estate Law (as added by Laws of 1929, chap. 229), and subject to the approval of the surrogate, for the purpose of compromising the alleged differences between and among the parties in interest, and for the purpose of avoiding litigation and the trouble and expense incident to a contest over the probate of the alleged will. This agreement provides for the distribution of decedent's estate and determines the interests of the parties herein. By the terms of the agreement it is provided that the paragraphs of said instrument purporting to be decedent's last will and testament which are marked " first," " fourth " and " lastly " shall be valid and the provisions thereof be fully carried out and performed; but that the paragraphs marked " second," " third," and " fifth " shall be null and void and shall not be carried out and performed as therein provided but rather as if the said paragraphs so marked " second," " third " and " fifth " were to read as follows: " I give and bequeath to each of the following persons, constituting all my next of kin, the following sums of money to be theirs absolutely,

that is to say, to George Bushnell, my brother, seven hundred fifty dollars ($750); to Henry Bushnell, my brother, seven hundred fifty dollars ($750); to Fred Bushnell, my brother, seven hundred fifty dollars ($750); to Theodore Bushnell, my brother, seven hundred fifty dollars ($750); to Julia Bushnell, my sister, seven hundred fifty dollars ($750); to Carrie Yerden, my sister, seven hundred fifty dollars ($750); to Louis Bushaw (Bushnell), my brother, seven hundred fifty dollars ($750); to Agnes Green, my sister, seven hundred fifty dollars ($750); to Lena Leventon, my niece, seven hundred fifty dollars ($750); to Wilbur Wadsworth, my nephew, three hundred seventy-five dollars ($375); and to Fred Wadsworth, my nephew, three hundred seventy-five dollars ($375).

" I give and bequeath to Andrew W. Mellon, of Washington, D. C.; Ogden L. Mills, of Washington, D. C.; W. O. Woods, of Washington, D. C.; John B. Miller, of Los Angeles, California; Felix M. Warburg, of New York, N. Y.; Edward M. Fenton, of Chicago, Illinois; Corcoran Thom, of Washington, D. C.; and John B. Larner, of Washington, D. C., as members of and as such constituting the Board of Endowment Fund Trustees of The American National Red Cross, and to their and each of their successors in such office, all the residue of my property after the payment of the above mentioned legacies, and after the payment out of said residue of my debts, funeral expenses, fees, commissions, expenses and allowances of Northern New York Trust Company as executor, and its attorneys, in the administration of my estate, in trust, nevertheless, to invest, reinvest and collect the income therefrom for the use and benefit of the Watertown Branch of the Jefferson County Chapter of The American National Red Cross to be used by said branch in its charitable purposes and causes as its Board of Directors shall determine from time to time and the income from said trust fund and so much of the principal thereof as my said trustees shall deem advisable for the charitable purposes and causes of said Branch shall be paid by my said trustees to the treasurer of said Branch, at such time and in such manner as my said trustees may determine, and the receipt of such treasurer shall be a full acquittance of my said trustees in the execution of the trust hereby created, and it is furthermore my will and I hereby direct that my said trustees and their successors in office shall not be required to give security of any kind or amount for the faithful performance of said trust, notwithstanding any provision of law requiring such security, and that the receipt of the chairman or secretary or other officer of the Board of Endowment Fund Trustees of The American National Red Cross shall be a full acquittance of

my executor herein named in the payment of said residuary estate to my said trustees."

In this proposed agreement and compromise the paragraphs marked " sixth " and " seventh " are disregarded.

Application has been made for the approval of said agreement pursuant to section 19 of the Decedent Estate Law, a hearing has been had, and the facts and circumstances have been inquired into as in said section 19 provided. This inquiry and hearing disclosed nothing that would indicate any basis for a *bona fide* contest over the probate of the alleged will. From the testimony given it appears that it was drawn by, and executed under the supervision of, an able and experienced lawyer. The two witnesses were lawyers and their testimony leaves no doubt as to the proper execution of the instrument as a will. There was no evidence produced sufficient to raise any serious qusetion as to the testamentary capacity of decedent. On the contrary, the evidence given tends, it seems to me, to show that decedent had testamentary capacity. It shows clearly that she was capable of preserving and caring for her property, and that she knew of what that property consisted. In the 7th paragraph of the alleged will she says: " My estate at the present time is a personal estate only, as I have no real property." Such was the fact. In the 1st paragraph she directs the payment of her just debts and funeral expenses and directs the approximate amount to be expended for her funeral expenses. In the 2d paragraph she gives and bequeaths $200 to her sister Julia. In the 3d paragraph she gives and bequeaths to her sister Carrie $100 and all of her wearing apparel except her fur coat. In the 4th paragraph she gives and bequeaths to her niece Cora Bushnell $100 and her fur coat, her beads, rings, gold watch and other jewelry, if any. In the 5th paragraph she disposes of the residue. Then in the 6th paragraph she says: " I have intentionally omitted to make any gift or provision for any one of my six brothers and my sister Mrs. Agnes Green." She made no mistakes as to the property which she had. She seems to have had a very clear conception of what it consisted. She made such provision as apparently she wished to make for her sisters Julia and Carrie and for her niece Cora Bushnell and then stated that she was intentionally not making provision for her sister Agnes and her brothers. She seems to have had her relatives quite clearly in mind. The instrument itself contains rather strong evidence of her testamentary capacity. It quite clearly shows that she knew of what her property consisted and, as well, the objects of her bounty. The contestants could not hope to establish by the evidence pro-

duced that decedent was of insufficient, or of disturbed, mentality when she made and executed the instrument. There was no evidence worthy of serious consideration in support of that contention. There was no evidence whatever of fraud or of undue influence. There was no evidence whatever that the alleged will was not freely and voluntarily made and executed by decedent, or that it was not her own free act and deed, or that its making and execution was induced by some person or persons acting in concert or privity with her. Those objections are absolutely unsupported. The remaining objection is not well taken and shows a lack of familiarity with the statute which it invokes.

Section 17 of the Decedent Estate Law (as amd. by Laws of 1929, chap. 229) provides as follows: "No person having a husband, wife, child, or descendant or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association, corporation or purpose, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of one-half, and no more. The validity of a devise or bequest for more than such one-half may be contested only by a surviving husband, wife, child, descendant or parent." Even a casual reading of this statute would have disclosed that it is not applicable here. Only a husband, wife, child, or descendant, or parent, is entitled to its benefits. Those benefits cannot be claimed by brothers or sisters or nephews or nieces. The objection, therefore, has no validity whatever and is in fact frivolous. The inquiry into the facts and circumstances here involved discloses no merit in the objections filed.

The 5th paragraph of the alleged will leaves the residue of the estate to the American Red Cross Society, with branch at the city of Watertown, N. Y., in trust, for the said branch to pay over and distribute the same within one year "for the relief and alleviation of the suffering children of the Near East," in accordance with the judgment of the officer or officers having charge of said branch.

This is a charitable trust and its validity is not affected by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries. Section 12, subdivision 1, of the Personal Property Law (as amd. by Laws of 1926, chap. 622) in part provides: "1. No gift, grant or bequest to religious, educational, charitable or benevolent uses, which shall in other respects be valid under the laws of this state, shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same."

The trustee named to carry out the trust abandons it and enters into a compromise agreement which gives all but a small part of the trust fund to relatives of the decedent to and for whom she states she has intentionally omitted to make any gift or provision. This so-called compromise agreement is made ostensibly to avoid a contest and litigation founded and based upon objections which appear to have no merit whatever and no basis other than a desire on the part of the decedent's relatives to share in the estate against the clearly expressed intention of decedent.

I do not believe that the facts and circumstances as brought out by the inquiry and upon the hearing justify the trustee in having entered into the said agreement, even if the right to do so had existed. I believe that it is the trustee's duty to support rather than to practically abandon the trust and I cannot approve the trustee's position. Following the line of least resistance is not always the proper course. I cannot lose sight of the fact that it is the decedent's property of which disposition is being made, and of the further fact that, in the first instance, it is the decedent's right to say where it shall go. The disposition which she, in the alleged will, has made of it is not contrary to any statute. There is no apparent reason why her plainly expressed intent should be disregarded and be superseded by the desires of her disappointed relatives or by what the surrogate might deem to be the best disposition to be made of her property. It was her property. She earned and saved it. I believe that her right to give it to whomsoever she wished should, within reason, be protected by the court. I do not believe that it is the intent or purpose of the statute that a decedent's disposition of his or her property made in an instrument purporting to be his or her last will and testament should be regarded as of little consequence or that it should be lightly considered and easily set aside. The intent and purpose of the statute, it seems to me, is not primarily to defeat the expressed direction of a decedent as to the disposition to be made of his property because his relatives are dissatisfied with the disposition thereof made by him, but rather to provide a means of compromising and settling real and *bona fide* difficulties and differences and disputes and controversies existing or arising between different interests concerning which *bona fide* and extended litigation is pending or threatened. The statute is founded upon common sense and, in support of public policy, favors the avoidance of litigation, but does not, I believe, favor the defeat of a testator's disposition of his property and his intent in relation thereto except for real and substantial reasons. If it were otherwise the making of a will would be an empty and useless formality. No testator could have any

assurance that he would have anything whatever to say as to what should be done with his property or to whom it should go. All wills would then in the last analysis be subject to reduction to the common formula — I leave all of my property to such disposition as my distributees shall see fit to make of it — subject only to the approval of the surrogate. The desires and intents of the distributees would be substituted for the desire and intent of the testator and would be controlling, subject always to the approval of the surrogate. The intent of the testator would become of little or no importance. This statute it seems to me has no such intent or purpose.

It appearing that there is no real merit in the objections filed I do not believe that decedent's expressed direction as to the disposition of her property should be defeated by approval of this agreement. This application is addressed to the sound discretion of the surrogate and in the exercise of that discretion, after careful inquiry into all the facts and circumstances, approval of said agreement must be and is denied.

Submit decree accordingly.