In the Matter of the Estate of GEORGE GRAY BARNARD, Deceased.

Surrogate's Court, New York County, March 30, 1939.

*Richard Steel*, for the petitioners.

*William C. Chanler, Corporation Counsel* [*Joseph G. De Vito, Assistant Corporation Counsel*, of counsel], for the City of New York.

*Gregory F. Noonan, United States Attorney* [*David McKibben, Assistant United States Attorney*, of counsel], for the United States of America.

*John J. Bennett, Jr., Attorney-General* [*Robert P. Beyer, Assistant Attorney-General*, of counsel], for the State of New York.

FOLEY, S. The executor in this proceeding seeks a construction of the will, particularly a determination of the nature of a legacy. Mr. Barnard, the testator, was an eminent sculptor of high standing in the United States and abroad. From statements contained in his will, which have been amplified by the testimony in the

proceeding, it appears that for a period of several years before his death he was engaged in the preparation and completion of plaster models of heroic size to be ultimately carved in marble as embellishments of a monumental arch. He desired it to be known as the Rain Bow Arch. He writes in his will that it is to be a vision of the progress of civilization typifying the accomplishments of peace rather than those of war and military conquest. He desired it to be dedicated to the Gold Star Mothers of America as a shrine to the nation, the State or the city of New York. The architectural plan and details were never worked out by him. There was general indication also in the will that he desired it to be placed upon certain real estate, which he owned, located on Fort Washington avenue in the city of New York. His estate consists of this realty, a valuable collection of Gothic works of art, his personal effects and a small amount of cash. The executor, the son of the testator, has endeavored to procure the erection of the arch as a public edifice by the Federal and State authorities and those of the city of New York. In this he has been unsuccessful principally because of the estimated cost of the project. One of the experts testified such cost would approximate $300,000. Undoubtedly the question of cost would be eliminated if in the ultimate liquidation of the assets of the estate sufficient funds are realized to complete the work without government or municipal aid.

Further complication has arisen because of the conceded inadequacy of the size and the undesirability as a public park of the property which Mr. Barnard recommended for the site. The estate has been under administration for approximately eight months. Because of the unliquid condition of the assets it is impossible at present to give specific instructions to the executor as to the course to be pursued by him.

Generally, the surrogate holds that the testamentary plan constitutes a valid charitable gift for a public purpose. The research of counsel and the surrogate has not revealed any reported decision by the courts of our State which dealt with the validity of a charitable gift for the erection of a public monument. However, it is common knowledge that such gifts have been made by wills and that monuments have been erected out of such legacies in parks and other public places. Perhaps the conceded attitude toward validity explains the lack of any case which considered the question. Decisions in other States have sustained legacies for monuments as valid public charitable gifts. (*Matter of Graves*, 242 Ill. 23; 89 N. E. 672; cited with approval in *Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462, 468; *Hosmer* v. *Detroit*, 175 Mich. 267; 141 N. W. 657; *Gilmer* v. *Gilmer*, 42 Ala. 9; *Matter of Smith*, 5 Pa.

Dist. Rep. 327; affd., 181 Penn. St. 109; Zollmann, American Law of Charities, § 322.)

With the present general determination of the validity of the gift and because of the lack of specific plans for the project, further instructions would be academic at this time. The executor himself is in doubt as to whether an arch should be erected or whether the shrine should take the form of two pylons in which the groups of sculpture designed by Mr. Barnard might be included. When actual funds of the estate are available and a site is obtained, the question of the actual form of the shrine may be submitted to the court in an appropriate proceeding. If any change from the original intent of the testator is necessary, it may then be approved in different form by the application of the doctrine of *cy pres*. (*Matter of Neher*, 279 N. Y. 370; *Matter of Gary*, 161 Misc. 351; affd., 248 App. Div. 373; affd., 272 N. Y. 635.)

In view of the conceded unavailability of the real estate on Fort Washington avenue, and pursuant to the alternative provisions of the testator's will, authority is granted to the executor to sell such real estate and to hold the proceeds as general assets of the estate. The surrogate determines that the provision of the will which permitted the son of the testator to occupy the house located on the property was precatory only and did not constitute an enforcible benefit by way of devise in favor of the son.

The exercise of the right of election by the widow under section 18 of the Decedent Estate Law was valid. The determination of the amount of her pecuniary interest must, however, await the liquidation of the assets of the estate, the payment of administration expenses and debts which can only be ascertained upon the final accounting of the executor. The further effect upon the will of section 17 of the Decedent Estate Law, which prohibits a gift of more than one-half of the estate, less debts, to charitable purposes, is likewise reserved for the final accounting.

Submit decree on notice accordingly.