In the Matter of the Estate of MARIA L. NIVEN, Deceased.
(Consolidated Proceedings.)

Surrogate's Court, New York County, April 19, 1943.

■■■■■■■

*Barr, Robbins & Palmer* for Central Hanover Bank and Trust Company, as trustee, petitioner.

*George Gray Zabriskie* for Rector, etc., of the Church of the Holy Spirit, Nice, France, respondent.

*Nathaniel L. Goldstein, Attorney-General (Corning G. McKennee* of counsel), in his statutory capacity under section 12 of Personal Property Law.

FOLEY, S. These are consolidated proceedings — one brought for the construction of the will and the other for the judicial settlement of the account of the trustee.

The testatrix died in 1896. In her will she gave to a corporate trustee, which was subsequently merged with the present corporate trustee, the sum of $10,000 " in trust to apply the net income thereof to the maintenance, repairs, and furnishing of the rectory of the Protestant Episcopal Church of the Holy Spirit at Nice, France, the rectory having been built and furnished by me and presented to said church * * *." There are other directions in the paragraph of gift which are hereinafter considered.

The church continued to function for a period of approximately forty-four years to the latter part of 1940, when war conditions in occupied France compelled a suspension of its religious activities. The present disputes between the trustee and certain religious corporations connected with the church have arisen out of this situation.

Complications have been created by the fact that three different corporations have been connected with the activities of the church. Before the death of the testatrix its activities were

conducted by a religious corporation formed in the year 1887 in New York under the title " The Rector Churchwardens and Vestrymen of the Church of the Holy Spirit, Nice, France." This institution is hereafter referred to as the New York corporation.

In 1935 a situation arose as to the approval of the trustee's informal account. An attorney expert in the law of France was consulted by the officials of the church at Nice. He recommended that in obedience to a French law of 1901 a corporation or society should be formed in that country. In such a situation a church could not function in France either unincorporated or if organized under the law of another country. Incorporation in France was, therefore, required. The new corporation was duly formed under the name of " The American Church of the Holy Spirit " of Nice, France. Its rector, wardens and vestrymen were the same persons who functioned as the officers of the New York corporation. This corporation is hereafter referred to as the French corporation.

A third corporation related to the activities of the church is the Board of Trustees of Foreign Parishes of the Protestant Episcopal Church in the United States of America. It owns the title to the real property upon which the church is located at Nice. It is not directly affected by the present disputes.

The controversy involves first the validity of an agreement approving the informal account of the trustee made pursuant to the action in 1936 and 1937 of the officers and congregation of the French corporation. The validity of this action in approving the informal account is attacked here and an attempt has been made by the objections filed to the account to compel a formal account by the trustee for the period from December 1, 1896, to December 23, 1935, that is, from the date of the setting up of the trust to the date of the last transaction in the informal account. The present account covers transactions since December 23, 1935.

The second question involves the propriety of the application by the Surrogate of the doctrine of *cy pres* and, specifically, whether the income which was directed to be applied for the maintenance, repairs, and furnishings of the church can be applied to the unpaid salary of the rector for a period of one year after the cessation of its activities.

The third question involved is whether regardless of the application of *cy pres* the trustee should be compelled to pay over the accumulated income of the fund to the New York corporation for the general purposes of the church or for the special purposes set forth in the will of the testatrix.

For a period of almost forty years no difficulty arose in the payment of the income or its application to the special purposes designed by the testatrix.

Upon the first question the Surrogate holds that the approval of the informal account of the trustee by resolutions duly adopted in 1936 and 1937, by the officers of the French corporation, was valid and conclusive. The church could not have been conducted in France under the law of that country unless the French corporation was formed. In this aspect it must be considered that the French corporation was an affiliate or subsidiary of the New York corporation. The context of the resolutions adopted by the French corporation supports the testimony of the attorney who incorporated it and who subsequently became a vestryman. Moreover, under the terms of the will, the trustee was directed to pay the income of the trust for the purposes specified by the testatrix "from time to time upon the written requisition of the Rector and Vestry for the time being of said church." Even aside from any formal corporate action, the approval of the informal account by these officials, who were identical as to the New York and French corporations, was a sufficient discharge under the condition directed by the testatrix just quoted above. As to all financial operations of the trustee, whether of payments of income or the propriety of investments, the approval of the rector and vestry of the church was sufficient.

The validity of agreements approving informal accounts by beneficiaries of estates has been the subject of recent decisions which have given recognition to such agreements. (*Matter of Schoenewerg*, 277 N. Y. 424; *Matter of James*, 173 Misc. 1042, affd. 262 App. Div. 703, affd. 287 N. Y. 645, certiorari denied, 315 U. S. 822, *sub nom. Anthony* v. *United States Trust Co.*)

The objection filed to the account by the New York corporation upon this phase of the case is, therefore, overruled and its application to compel the trustee to account again for the period covered by the informal account is denied.

Upon the second question the Surrogate holds that the doctrine of *cy pres* may not be invoked in the existing situation so as to authorize a direction to pay the salary of the rector out of the income which was specifically limited by the testatrix to be devoted to the maintenance, repairs, and furnishing of the rectory of the church. The cessation of its activities during the present war must be deemed to be temporary only. Its officers have planned to resume its activities immediately after this war has been concluded. Undoubtedly, the rectory and its furnishings will require rehabilitation. The accrued income will thus be available for that purpose.

Where the maker of a will imposes a condition as to the object to which the principal or income of a charitable gift is to be applied, the direct purpose must be carried out if at all possible. The most recent authority in this State upon that question is *St. Joseph's Hospital* v. *Bennett* (281 N. Y. 115). There, the bequest to the charity was " to be held as an endowment fund and the income used for the ordinary expenses of maintenance." It was determined that the intent of the testator was that his gift be held as a permanent fund and that the income was to be used for the ordinary expenses of maintenance. It was sought to use the bequest in partial payment of a mortgage debt on the real property of the hospital and for objects which although within its corporate powers were outside the ordinary expenses of maintenance. The claim of the corporation to its right to divert the funds within the gift from the limited purpose expressed by the testator to other objects was denied by the Court of Appeals. It could not " receive a gift made for one purpose and use it for another, unless the court applying the *cy pres* doctrine so commands."

There are no facts to justify such a command in the pending proceeding. Where property is given in trust for a particular charitable purpose, circumstances may arise which justify the invocation of the doctrine of *cy pres* if it becomes impossible or impracticable to carry out the direct purpose. In the absence of such circumstances the court will compel the trustee to carry out the direct purpose. (Restatement, Law of Trusts, § 399.)

Here, as in the case of *St. Joseph's Hospital* v. *Bennett* (*supra*) aside from the question of *cy pres,* the officers of the church are without power to apply the income to unauthorized objects such as the unpaid salary of the rector. Nor is it logical or necessary to invoke the doctrine of *cy pres*. All of the parties are in agreement that after the war funds will be necessary to repair and refurnish the rectory. There are ample funds of the New York corporation available for the general purposes of the church. The trustee in that capacity holds the fund here involved. In a separate capacity as custodian or agent it holds securities and cash stated to aggregate $110,000 for the general purposes of the church. Resort must be had to these funds before even the slightest consideration should be given to the invocation of *cy pres*.

The unfortunate differences which have arisen between the church, in its capacity as agent or custodian, and the dual existence of the church as a French corporation and a New York corporation, should be capable of speedy adjustment.

The salary of the rector, admittedly and justly due him, should be promptly paid. Moreover, litigation should be avoided on the further question as to the propriety of the investments made by the custodian or agent.

If circumstances should fundamentally change and there should be a final discontinuance of the conduct of the church, a situation may arise in which *cy pres* should be invoked. Necessarily, that situation must be reserved for some future proceeding.

Upon the third question the Surrogate holds that the trustee is not required to pay over the income of the trust fund to the New York corporation. It is charged with the duty to see that the funds are properly applied to the purposes specified by the testatrix, that is, the maintenance of the rectory. It is justified in withholding any payments until the reopening of the church at Nice is demonstrated as an undisputed fact. During the period of cessation, in its refusal to pay over these funds, it has the approval of the Attorney-General who is charged with the duty of enforcing charitable trusts. The Surrogate, likewise, under his duty under the Tilden Act, approves such withholding. (Personal Property Law, § 12.)

All the parties have agreed that the separate American religious corporation — National Council of the Protestant Episcopal Church, or its nominee — should be reimbursed for moneys advanced and actually expended by it for the maintenance of the rectory. The exact amount, when computed by the parties, is directed to be paid under the decree as a proper disbursement from the income of the trust fund.

Submit decree on notice construing the will and settling the account accordingly.