In the Matter of the Construction of the Will of CHARLES M. LAWLESS, Deceased.

Surrogate's Court, Kings County, February 25, 1949.

*Alfred J. Bedard* and *Julian A. Ronan* for George D. Mulligan, as executor of Charles M. Lawless, deceased.

*John A. Bell, Jr.,* and *James A. Carney* for Sisters of Saint Dominic of Blauvelt, New York.

*Charles G. Coster* for Francis A. Lawless, Sr., and another.

*Lorenz, Finn & Lorenz* for Francis A. Lawless, Jr.

*William F. X. Geoghan,* special guardian for Christopher T. Lawless, Jr., and another, infants.

*Nathaniel L. Goldstein, Attorney-General (P. Hodges Combier* of counsel), for unknown charitable beneficiaries.

McGarey, S. The decree of probate reserved for later consideration the construction of paragraph " Eleventh " of the will of testator, dated December 4, 1941. The executor, who is also the trustee, seeks to have determined the validity, force and effect of the provisions in paragraphs " Fifth " and " Eleventh " and the second subdivision of paragraph " Seventh" of the will. Questions have also been raised, by way of answer, in regard to the first subdivision of paragraph " Seventh " and all of paragraph " Tenth " thereof, which must also be construed.

The bequest in paragraph " Fifth " for the celebration of masses is of a charitable nature and constitutes a gift in trust for a charitable use (*Matter of Morris,* 227 N. Y. 141; *Matter of Idem,* 256 App. Div. 124, 126, affd. 280 N. Y. 756; *Matter of Breckwoldt,* 176 Misc. 549, 551–552; *Matter of Steiner,* 172 Misc. 950, 951; *Matter of Fleishfarb,* 151 Misc. 399, 401, and cases cited). That the intended recipient of the gift in trust and his successor are directed to use the income thereof until maturity of the bonds does not destroy or lessen the gift as one of income and principal, the intent being, in the language of the provision that " the principal be used ' as far as it will go ' for the same purpose until the principal fund is exhausted." The written offer by the pastor substantially complies with the terms of the will and constitutes a valid acceptance of the bequest. Accordingly, the decree to be entered herein may provide for the delivery over of the property in question.

The two separate gifts in paragraph " Seventh " for testator's named nephew individually and "in trust for his children " are held to be general, and not specific, bequests. In regard to the gift " in trust," the language imposes no active duties upon

the named person and creates no trust. The legal title passes directly to the " children " of the named person, and the latter takes nothing (Real Property Law, § 93; *Sinnott* v. *McLaughlin,* 198 App. Div. 630, 633; *Matter of De Rycke,* 99 App. Div. 596, 597; *Matter of Kennedy,* 151 Misc. 193, 194; *Matter of Terwilligar,* 142 Misc. 249, 253; *Matter of Engel,* 140 Misc. 276, 282–283). The provision is held to constitute a gift to the two children of said person, equally as tenants in common, both of whom were living at the time of the execution of the will and at the death of the testator, and are still living, and the decree may so provide.

Paragraphs " Tenth " and " Eleventh," present questions concerning which there is much dispute.

By paragraph " Eleventh," testator gives his residuary estate, including his former Milton Street residence, to his trustee in trust for the purpose of founding an institution to be known as " St. Mary's Brooklyn Free Home for Cancer Patients," with instructions for the establishment and maintenance of the home by the trustee. He then authorizes his trustee to arrange with the Sisters of the Convent of Saint Dominic at Blauvelt, New York, for the conduct and operation of the home by its members, and " at my Trustee's discretion at the proper time to transfer and convey to the said Sisters   &ast;   &ast;   &ast; the said land and premises, together with the fittings and appropriate furnishings, to have and to hold the same to the said corporation, its successors and assigns forever." He also authorized his trustee to expend about $2,000 to adapt his former residence " for the care for convalescents."

In requesting a construction of paragraph " Eleventh," the petitioner alleges that a literal compliance with the provisions thereof is not possible due to inadequacy of the funds available for such purpose. In regard to the Milton Street property, a two-story and basement frame building, unoccupied for many years, and in a state of extreme disrepair, he points out that an expenditure of several times the sum authorized by the will would be required to adapt it for the care of convalescents.

It is stated, and not disputed, that if all of the nonresiduary dispositions, including the $20,000 in trust created by testator in paragraph " Tenth " for his nephew, are sustained, the residuary estate will not exceed $60,000, inclusive of the proceeds of sale of the Milton Street property. That such an amount is wholly inadequate for either of the purposes mentioned in said paragraph was adequately supported by testimony.

The situation herein presented is therefore not one where a nominated fiduciary has refused to qualify or, having qualified, seeks to resign his office, or of a fiduciary who refuses to accept the gift or specifically renounces the same. Rather, it is one where the fiduciary states that he cannot comply literally with the terms of the will and submits to the court a determination of his rights in respect to a gift to him in trust which he cannot apply in the precise manner prescribed by testator. He urges that the provisions in question reveal testator's intention to dedicate his residuary estate to a general charitable use; that a valid charitable trust of the residue was created thereunder and, since a literal compliance with its provisions is impracticable because of inadequacy of the fund available therefor, the cy pres doctrine should be applied by the court.

In the exercise of such powers, the petitioner suggests the adoption of any one of three plans depending upon what the court determines was the dominant wish of the testator, viz.: (a) that if it was testator's wish to aid patients suffering from cancer, through the ministrations and nursing care provided or directed by the Sisters of Saint Dominic of Blauvelt, New York (described in the will as the Sisters of the Convent of St. Dominic at Blauvelt, Rockland County, New York State, and hereinafter referred to as the Sisters), to turn over the residue to the Sisters to be used by them for the nursing, care and treatment of persons suffering from cancer, or (b) to turn it over to House of Calvary, which is operated but not owned by the Sisters, where its members are providing nursing care for cancer patients, or (c) if it was testator's dominant wish to provide some place in Brooklyn where persons suffering from cancer should be cared for, to turn over the residue to some institution or organization under the jurisdiction and control of the Roman Catholic Diocese of Brooklyn to be used for that purpose. These suggestions render advisable present reference to certain established facts.

Testator, a lifelong resident of Brooklyn, died in October, 1946. That he was a person of deep religious convictions is very evident from his testamentary dispositions. That the paragraph in question discloses a charitable intention to give succor to persons afflicted with the dreadful malady of cancer is free from doubt.

"The Sisters" is a domestic corporation organized under the Membership Corporations Law of this State. It is a Catholic religious order and its activities are charitable and not carried

on for profit. Among a number of institutions which it owns and/or operates, it has operated for the past thirty-five years and still operates (but does not own or manage the business affairs of) a hospital known as the House of Calvary in The Bronx, New York, for incurable cancer patients. Some of the members of the Sisters are regularly assigned to and perform services at the hospital, and one of its members has been superintendent therein for the past twenty-one years.

Testator knew the Mother Superior of the Sisters and he visited its establishment at Blauvelt, New York, about twelve times between 1938 and the date of his death in 1946. He told the Mother Superior that he met the pastor of the parish in which the House of Calvary was located, and that the pastor acquainted him with the activities of the Sisters at the House of Calvary. There is also testimony that between January 1 and October 1, 1948, seventy-five persons from the Brooklyn Diocese were patients in the House of Calvary and thirty-seven from that diocese were there at the time of the hearing; that the Sisters do not conduct any activities in the borough of Brooklyn; that it has not the available personnel at the present time to conduct and operate the institution called for in the will, nor has it made application to the Brooklyn Diocese for permission to take over an institution in such diocese. The testimony also reveals that at present there is no Catholic hospital for cancer patients in Brooklyn nor is one exclusively for such purpose in contemplation. Further, that the diocese did not operate a convalescent home at present, and had in fact terminated the operation of its last such institution more than ten years ago because of structural problems.

Respondent Sisters did not specifically renounce or refuse to accept the provisions intended for it by the will. Rather, its position is a threefold one and is in the alternative. It contends that paragraph " Eleventh " did not create a valid trust, but that testator made to it an absolute and unconditional devise and bequest of the residue for its general charitable purposes, and without regard to and free from any specific restriction, limitation or direction contained in the will. This position assumes that the directions to the trustee to found, establish and maintain the institution or home are permissive, discretionary and precatory in nature. In the event the court holds that an absolute and unconditional gift to the Sisters was not intended by testator, then it claims, in the alternative, that a valid charitable trust was created, compliance with which is

impracticable by reason of inadequacy of the residue available for the purposes mentioned in the will. In such event, the Sisters offer two plans in the application by the court of its cy pres powers, namely, that the residue be given over to it for the purpose of educating its members in the nursing, care and treatment of cancer patients, or, in the alternative, that the House of Calvary be selected by the court to execute the cy pres power.

The gift of the residue to the Sisters was neither absolute and unconditional nor in a form making the gift subject to enforcible restrictions. It was given in the first instance " to my trustee hereinafter named " and not to the Sisters, and for the stated " purpose of founding and establishing  *  *  *  an institution or home to be known as St. Mary's Brooklyn Free Home for Cancer Patients." To carry out this purpose, he authorized his trustee to purchase and provide the necessary and appropriate land, building or buildings, premises, fittings and furnishings. He also empowered his trustee to maintain the institution or home at his discretion for a reasonable time, if and when established.

The direction to the trustee to make the appropriate arrangements with the Sisters for its conduct and operation of the home or institution was necessarily predicated and dependent upon the actual existence of such home for without it there would be no need to arrange for its conduct and operation. This is also inherent in the further provision wherein the trustee is directed in his discretion at the proper time to convey to the Sisters absolutely and forever " the said land and premises, together with the fittings and appropriate furnishings " or, in other words, an *existing* institution. The conveyance and transfer over by the trustee was therefore conditional upon the actual existence of the home as a going institution and his completion of arrangements with the Sisters for its conduct and operation by the Sisters' members. To further emphasize his intent to make the trustee, and not the Sisters, the recipient of the residue in the first instance and to charge him and not the Sisters with the afore-mentioned duties and obligations, testator appointed as alternate executor and trustee a trust company in the event his individual executor and trustee should die or be unable to perform his duties. Added evidence of such intent is found in testator's authorization to the trustee to expend a stated amount to adapt for the care of convalescents his Milton Street property which was specifically included in

the residue which " I give, devise and bequeath to my trustee ".

Even if it were assumed for the purpose of discussion that the language used in the direction to the trustee to convey the residue to the Sisters constituted an outright gift and not in trust, such gift might still be subject to enforcible restrictions as to its use as contemplated by the will, for while: " The charitable corporation is not bound by all the limitations and rules which apply to a technical trustee. It may not, however, receive a gift made for one purpose and use it for another, unless the court applying the *cy pres* doctrine so commands." (*St. Joseph's Hosp.* v. *Bennett,* 281 N. Y. 115, 123; see, also, *Matter of Brooklyn Children's Aid Soc.,* 269 App. Div. 789; *Matter of Pelton,* 190 Misc. 624; *Lutheran Hosp. of Manhattan* v. *Goldstein,* 182 Misc. 913, 917–919; *Knickerbocker Hosp.* v. *Goldstein,* 181 Misc. 540, 545–546; *Matter of Niven,* 180 Misc. 767, 771.) But this requires no determination in view of the court's holding that the residue was given in trust to the trustee in the first instance for a charitable use coupled with the responsibility of executing the trust until such time as he could in the manner provided by the will give over to the Sisters the trust property with its corresponding obligations.

But the petitioner says, and it has been proven to the satisfaction of the court, that a literal compliance with the provisions of paragraph " Eleventh " is impracticable and impossible because of inadequacy of the residuary fund available therefor, although, as he urges, the gift in trust may be effectuated by application of the cy pres doctrine.

Cy pres applications are based on a rule of construction that gives effect to the general charitable intent of the testator despite the fact that his subsidiary intent that the gift take effect in a particular manner is impossible of realization (*Matter of Stuart,* 183 Misc. 20, 26; *Matter of Neher,* 279 N. Y. 370, 374).

Prior to the adoption of the so-called Tilden Act (L. 1893, ch. 701) which, with subsequent amendments, is now encompassed in sections 12 of the Personal Property Law and 113 of the Real Property Law, the cy pres doctrine did not exist. By their enactment, it was the legislative intention to uphold charitable trusts not theretofore recognized as valid. While these statutes did not change the rule that an unincorporated association or group is not competent to take and hold property by devise or bequest (*Matter of Merritt,* 280 N. Y. 391, 399, and cases cited; *Matter of Grossman,* 190 Misc. 521, 525), yet, if the gift, whether outright in form or in trust (*Matter of Merritt, supra; City Bank*

*Farmers Trust Co.* v. *Arnold,* 283 N. Y. 184, 194, and cases cited), is for a *general* religious, educational, charitable or benevolent use, such gift, valid in other respects, will not be deemed invalid because it was given to an unincorporated association or institution (*Matter of Dazian,* 167 Misc. 151, 154, affd. 255 App. Div. 951; *Matter of Howells,* 145 Misc. 557, 146 Misc. 169; *Matter of Patterson,* 139 Misc. 872; *Matter of Winburn,* 139 Misc. 5); or because of indefiniteness or uncertainty of the persons designated as the beneficiaries, or because the purposes are not sufficiently or adequately identified, but, nevertheless, instinct with a purpose to devote the gift to public uses and benefits (*Matter of Durbrow,* 245 N. Y. 469; *Matter of Everson,* 268 App. Div. 425, affd. 295 N. Y. 622; *Matter of Antoni,* 186 Misc. 988, 990; *Matter of Hamilton,* 185 Misc. 660, and cases cited p. 668, affd. 270 App. Div. 634, affd. 296 N. Y. 578; *Matter of Macaulay,* 173 Misc. 887, 889; *Matter of Leo,* 170 Misc. 491, 494; *Matter of Dazian, supra,* p. 153; *Matter of Browning,* 165 Misc. 819, and cases cited p. 830, affd. 254 App. Div. 843, affd. 281 N. Y. 577; *City Bank Farmers Trust Co.* v. *Bennett,* 159 Misc. 779, 785; *Matter of Tiffany,* 157 Misc. 873, and cases cited pp. 882–887; *Matter of Hall,* 156 Misc. 841, affd. 247 App. Div. 719, affd. 272 N. Y. 428; *Matter of Wadsworth,* 142 Misc. 717, 722, affd. 236 App. Div. 712; *Matter of Killen,* 124 Misc. 720; *Matter of Cohen,* 58 N. Y. S. 2d 924; *Matter of Andrejevich,* 57 N. Y. S. 2d 86, 87–88; *Matter of Manville,* 57 N. Y. S. 2d 439, 441).

Nor would such general type of gift fall because of failure to appoint a trustee (*Matter of Merritt, supra; Matter of Rupprecht,* 271 App. Div. 376, 382, affd. 297 N. Y. 462) or, where named, the nominee either refuses to accept the appointment, or to accept the gift or renounces or abandons it (*City Bank Farmers Trust Co.* v. *Arnold,* 268 N. Y. 297, 303–304; *Matter of Tiffany, supra,* p. 876; *Matter of Judd,* 242 App. Div. 389, 390, affd. 270 N. Y. 516; *Matter of Wadsworth, supra,* p. 723), or, having accepted the designation, is either incapable of or indisposed to performing or carrying out the duties attached to the office and to the gift (*Matter of Harrington,* 245 App. Div. 252, 254; *Matter of Leo, supra*).

The cy pres doctrine has been applied to such class of gifts where a literal compliance with the terms of the bequest or devise is impracticable or impossible because of inadequacy of the funds or property made available therefor or for other reasons (*City Bank Farmers Trust Co.* v. *Arnold,* 283 N. Y. 184, 193–194, *supra,* 268 N. Y. 297, 305, *supra; Matter of Neher,* 279

N. Y. 370, *supra; Unger* v. *Loewy,* 236 N. Y. 73, 79; *Sherman* v. *Richmond Hose Co.,* 230 N. Y. 462, 473; *Matter of MacDowell,* 217 N. Y. 454, 465, 466; *Trustees of Sailors' Snug Harbor* v. *Carmody,* 211 N. Y. 286, 300; *Matter of Rupprecht,* 271 App. Div. 376, 380, affd. 297 N. Y. 462, *supra; Matter of Gary,* 161 Misc. 351, 352, affd. 248 App. Div. 373, 375, affd. 272 N. Y. 635; *Matter of Harrington,* 243 App. Div. 235, 239, adhered to, 245 App. Div. 252, 254; *Matter of Swan,* 237 App. Div. 454, 460–461, affd. *sub nom. Matter of St. John's Church of Mt. Morris,* 263 N. Y. 638; *Matter of Hamilton, supra,* p. 669; *Matter of Stuart,* 183 Misc. 20, *supra; Knickerbocker Hosp.* v. *Goldstein,* 181 Misc. 540, 544, *supra; Matter of Borden,* 180 Misc. 988, 993; *Matter of Whittelsey,* 180 Misc. 602, 604; *Matter of Barnard,* 170 Misc. 875, 877; *Matter of Dean,* 167 Misc. 238, 241; *Matter of Meyers,* 166 Misc. 712, 713; *Matter of Arber,* 151 Misc. 861; *Matter of Walter,* 150 Misc. 512, 513, 514; *Matter of Nelson,* 143 Misc. 843, 846; *Camp* v. *Presbyterian Soc. of Sackets Harbor,* 105 Misc. 139, 152–153; *Matter of Byrne,* 71 N. Y. S. 2d 359, 361).

Cy pres has been applied to many other situations too numerous to mention. It has been invoked where the beneficiary has no separate independent legal existence but is a branch or department of a parent organization (*First Methodist Church of Penn Yan* v. *Putnam,* 189 Misc. 519, 522; *Matter of Calkins,* 182 Misc. 44, 46; *Matter of Tinker,* 157 Misc. 200; *Matter of Rogers,* 143 Misc. 834, 835; also, *Matter of Jackson,* 192 Misc. 618, 620–621; *Matter of Stymus,* 64 N. Y. S. 2d 304; *Matter of Eaton,* 62 N. Y. S. 2d 348, 349, and cases cited; *Matter of Burns,* 61 N. Y. S. 2d 614, 615); or where it had no separate legal capacity at the time of vesting of the gift, having been consolidated with another corporation in the form of a new legal entity (*Matter of Mills,* 156 Misc. 473, 475) or carried on as a branch of a new charitable corporation (*New York City Mission Soc.* v. *Board of Pensions of Presb. Church,* 261 App. Div. 823, motion for leave to appeal denied 261 App. Div. 932); or was incapable of accepting the gift, having abandoned its corporate purpose and there existed in the community a capable organization rendering similar services (*Matter of Duke,* 181 Misc. 529, 536; *Matter of Mills,* 121 Misc. 147, 150); or where the beneficiary, although in existence at the time of vesting could not receive the gift because of war conditions (*Matter of Brunzel,* 51 N. Y. S. 2d 483, 484), or ceased to function as to certain or all of its activities (*Sherman* v. *Richmond Hose Co., supra; Matter of Harrington, supra,* p. 238; *Matter of Chaim,* 168 Misc. 923, 930–931; *Matter of Walter,*

*supra; Graff* v. *Harrington,* 137 Misc. 712, 713–714; *Graff* v. *Raymer,* 136 Misc. 297, 298; *Matter of Shelton,* N. Y. L. J., Dec. 29, 1942, p. 2067, col. 4, FOLEY, S.).

It remains to be determined whether the gift herein fails for any of the reasons urged by those claiming intestacy as to the residue or whether it may be sustained as a valid charitable trust to which the cy pres doctrine may be applied.

The Attorney-General, acting under his statutory duty to enforce the public policy of this State in the protection of charitable trusts, urges that the will provides for a general charitable trust to which cy pres is applicable.

In the application of cy pres, the first question to be answered is whether testator created or intended to create a trust for a general charitable use (*Matter of Merritt,* 280 N. Y. 391, *supra; City Bank Farmers Trust Co.* v. *Arnold,* 283 N. Y. 184, 193, *supra; Matter of Grossman,* 190 Misc. 521, 524, *supra; Matter of Gault,* 48 N. Y. S. 2d 928, 930).

In the interpretation of wills it is the paramount duty of the court to ascertain the intention of the testator from the language of his will and to carry out that intention as far as it is legally capable of effectuation (*Matter of Buttner,* 243 N. Y. 1; *Matter of Gallien,* 247 N. Y. 195, 200) and all rules of construction must bow to such intent (*Cammann* v. *Bailey,* 210 N. Y. 19, 30; *Matter of Chamberlin,* 289 N. Y. 456). " So far as possible the courts should strive to sustain the validity of the directions of a testator who, motivated only by charitable purposes, has by his will manifested an intent that his mortal existence be consummated with an act of benevolence to his fellow man." (*Matter of Stymus,* 64 N. Y. S. 2d 304, 307–308, *supra.*) Therefore, where " The intention to make a gift for charitable and religious purposes pervades and dominates the whole bequest and the court will give it effect if it is possible so to do by the application of the most liberal rules of construction that the law will permit." (*Matter of Durbrow,* 245 N. Y. 469, 474, *supra.*) Where the language is susceptible of more than one interpretation, " a construction which is fairly within the rules of law and that sustains the trust and devotes the fund included therein to purposes permitted by law and to the good of humanity should be preferred." (*Matter of Robinson,* 203 N. Y. 380, 388.)

Examination of the provisions in question discloses the use of express words of trust and it requires no citation of authority for the statement that a trust, the purposes of which were to provide a " free home for cancer patients " and a place for the

"care for convalescents," belongs to that species of trusts known as charitable. As a matter of fact, the whole tenor of the will indicates, and the court finds, an intention to devote the residue to such charitable purposes. A lay person would have no difficulty in recognizing the exclusively charitable purposes in the words used by the testator, and "Courts should not, by self-imposed impotence, not required by the precedents, be less efficacious." (*Matter of Selner*, 261 App. Div. 618, 623, affd. 287 N. Y. 664.) The very form of the gift is such that it would exclude uses other than those protected by section 12 of the Personal Property Law and section 113 of the Real Property Law, and restrict the use of the gift to purposes generally regarded as charitable. It is difficult to perceive humanitarian purposes more clearly encompassed within the mandate of the Tilden Act. (*City Bank Farmers Trust Co.* v. *Bennett*, 159 Misc. 779, 784–785, *supra; Matter of Walters*, 172 Misc. 207, 209, affd. 259 App. Div. 1078, mod. on other grounds, 285 N. Y. 158; *Matter of Lachat*, 184 Misc. 486, 488, 490, motion to dismiss appeal granted, 269 App. Div. 1013; *Matter of Judd*, 242 App. Div. 389, affd. 270 N. Y. 516, *supra; Prudential Ins. Co. of America* v. *New York Guild for Jewish Blind*, 252 App. Div. 493, 494; *Butterworth* v. *Keeler*, 219 N. Y. 446, 451.)

The court construes the gift in trust to be for general charitable uses. To read into the will an intention of the testator to restrict the use of the residue to a specific purpose and for no other, as distinguished from a general charitable purpose, would do violence to his testamentary design. There is ample evidence in the language used of this intention to devote the gift to purposes broadly charitable.

It was no part of testator's determined purpose and plan that if the residue could not be used in a specific manner, the gift should fail or become inoperative, and go to another beneficiary (cf. *Matter of Fletcher*, 280 N. Y. 86, 91; *Matter of Merritt*, 258 App. Div. 188, 190, affg. 171 Misc. 812; *Matter of Fowler*, 43 N. Y. S. 2d 94, 99, affd. 268 App. Div. 788; the comment on p. 194 in *City Bank Farmers Trust Co.* v. *Arnold*, 283 N. Y. 184, *supra*; and see, *Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462, 466, *supra*, and *Matter of Gary*, 248 App. Div. 373, 376–377, *supra*, containing provisions for lapsing and failure of the bequest and for gift over, but where, as in last-cited case, a general charitable intent was found to exist). Nor did he restrict his gift to a specific purpose with a particular object in view, as distinguished from a general charitable purpose, and none other,

thereby clearly evidencing an intention not to create a trust for a general charitable use (cf. *Matter of Merritt,* 280 N. Y. 391, 400, *supra; Saltsman* v. *Greene,* 256 N. Y. 636; *Albany Hosp.* v. *Albany Guardian Soc.,* 214 N. Y. 435, 439; *Camp* v. *Presbyterian Soc. of Sackets Harbor,* 105 Misc. 139, 146, *supra; Matter of Gault,* 48 N. Y. S. 2d 928, *supra.* See, also, *Matter of Swan,* 237 App. Div. 454, 461, *supra,* for comment on holding in *Saltsman* case, *supra*).

Nor was the gift to a particular institution which never existed or ceased to exist or was dissolved prior to the time it was to take effect, and such gift was not for a general charitable purpose (*Wright* v. *Wright,* 225 N. Y. 329; *Matter of O'Hanlon,* 147 Misc. 546, 548–549; *Matter of Rappolt,* 140 Misc. 239, 241; *Matter of Joseph,* 62 N. Y. S. 2d 197; *Barnum* v. *D'Hendecourt,* 28 N. Y. S. 2d 143, 145), nor one made for a specified purpose, and not for a general charitable purpose, to an existing institution capable of receiving the gift but refusing to accept and, in fact, renouncing the same (*Albany Hosp.* v. *Albany Guardian Soc., supra; Matter of Meyer,* 137 Misc. 730, 731–732. See, also, *Matter of Harrington,* 243 App. Div. 235, 239, *supra*).

Here, testator gave all of his residue, including his house, to his trustee. He wanted his trustee to establish a free home for cancer patients, giving him the necessary powers to purchase the land, buildings and equipment for such purpose. While there is indication by the name testator attached to the institution that he intended the home for cancer patients to be established in this county, he certainly did not restrict his trustee to the use of a particular building or location and to no other. Even if he did, that would not destroy the gift if one for a general charitable use. "Neither can the possibility * * * that the homestead property will, for any reason, prove unsuitable as a location * * * be considered as a valid objection." (*Matter of Hamilton,* 185 Misc. 660, 669, *supra.* See, also, *City Bank Farmers Trust Co.* v. *Arnold,* 283 N. Y. 184, 195, *supra; Matter of MacDowell,* 217 N. Y. 454, 458, 466, *supra; Matter of Rupprecht,* 271 App. Div. 376, 380, *supra; Matter of Swan,* 237 App. Div. 454, 455, 459–460, *supra; Matter of Borden,* 180 Misc. 988, *supra; Matter of Barnard,* 170 Misc. 875, 876, *supra; Matter of Dean,* 167 Misc. 238, 239–240, *supra; Matter of Nelson,* 143 Misc. 843, 845–846, *supra*.)

Likewise, in connection with his house for which testator authorized his trustee to expend a specified amount to adapt the same for the care of convalescents, it is to be observed that

the property was specifically included in the gift of the residue and the sale of this property by the trustee was in no wise restricted, but, on the contrary, the executor and trustee was given, by paragraph " Twelfth " of the will, broad discretionary powers to sell testator's real and personal property. With knowledge of its state of disrepair, testator, nevertheless, restricted the amount to be expended for the purpose stated. Yet, if the house could not be adapted for the particular use he made no disposition by way of devise over to another (see *Matter of Swan, supra*).

In regard to the home for cancer patients, he made no gift over of the residue in the event his trustee could not literally comply with his wishes that the institution be established, or, if established by the trustee, that the Sisters refused or could not for any reason agree to any arrangements looking to the conduct and operation of the institution by its members. On the contrary, he specifically limited his sole distributee to a $100 bequest, having otherwise provided for him in life, wrote in his will an *in terrorem* clause and made no other disposition of his residue in the event his plan of effectuating his charitable gift could not be literally complied with.

" It may be that the income of a fund of about $63,000 which the testatrix has attempted to donate to the creation of this trust will not be adequate to carry out the trust in the exact manner in which the testatrix contemplated that it would be carried out, but this fact would not justify declaring the trust invalid and permitting this fund to go to others whom it is clear the testatrix did not intend should receive it. The inadequacy of the trust fund cannot in any way affect the validity of the trust." (*Matter of MacDowell*, 217 N. Y. 454, 464–465, *supra*. See, also, *Matter of Wadsworth*, 142 Misc. 717, 723, *supra*.)

While conditions and restrictions were intended in connection with the secondary gift to the Sisters, the initial and primary gift in trust to the trustee was not contingent upon specified conditions.

That testator desired the residue to be administered under the auspices of a particular religious denomination does not affect or lessen in any way the general charitable purposes of his gift (*Matter of Rupprecht*, 271 App. Div. 376, 381, *supra*). Nor does the fact that he may have intended to limit his gift to a class of persons solely within the confines of this county make the gift subject to attack as not being a gift for charitable purposes (*Butterworth* v. *Keeler*, 219 N. Y. 446, 448, 451, *supra; Matter*

*of Rupprecht, supra,* pp. 378, 381; *Matter of Antoni,* 186 Misc. 988, *supra; Matter of Jackson,* 175 Misc. 882, 893, affd. 262 App. Div. 997, motion for leave to appeal denied, 263 App. Div. 707, motion for leave to appeal denied, 287 N. Y. 854; *Matter of Stymus,* 64 N. Y. S. 2d 304, 309, *supra).*

Nor would the fact that the charity is intended as a memorial impair the otherwise public character of the gift (*Sherman* v. *Richmond Hose Co.,* 230 N. Y. 462, 469, *supra; City Bank Farmers Trust Co.* v. *Arnold,* 268 N. Y. 297, *supra; Matter of Rupprecht, supra,* pp. 378, 381; *Matter of Gary,* 248 App. Div. 373, 377, *supra; Matter of Harrington,* 245 App. Div. 235, 238, *supra; Matter of Swan,* 237 App. Div. 454, 456, 459–460, *supra; Matter of Jackson,* 175 Misc. 882, 885–886, *supra).*

A general charitable intention having been found inherent in the will, the gift in trust has not legally lapsed merely because it cannot be carried out in the precise manner specified by testator. Consequently, no intestacy has resulted, and the rule that where the gift has lapsed, the doctrine of cy pres cannot save it is not applicable to this case (See, *Matter of Swan, supra,* pp. 461–462; *Matter of Harrington, supra,* pp. 238–239; *Matter of Gary, supra,* p. 376; *Matter of Walter,* 150 Misc. 512, 516–517, *supra,* particularly, Surrogate FOLEY's interpretation of the holding in *Matter of O'Hanlon,* 147 Misc. 546, *supra; Matter of Walker,* 185 Misc. 1046, 1056–1057, citing *Matter of Walter, supra; Matter of Whittlesey,* 180 Misc. 602, 606, *supra).* Nor will a renunciation or disclaimer of the gift, not here shown to exist, defeat it where, as here, it is for general charitable purposes (*City Bank Farmers Trust Co.* v. *Arnold,* 268 N. Y. 297, 303–304, *supra).*

The following by Judge LEWIS (*City Bank Farmers Trust Co.* v. *Arnold,* 283 N. Y. 184, 194, *supra*) is equally appropriate and applicable to the situation presented here: " We are not unmindful of the rule in *Matter of Fletcher* (280 N. Y. 86). But there, unlike the present case, there was no evidence of a general charitable intent by the donor and the will contained a definite provision for a gift over to a named beneficiary." (See, also, *Matter of Fletcher,* 259 App. Div. 335, 337; *Matter of Stuart,* 183 Misc. 20, 26, *supra; Matter of Dettmer,* 177 Misc. 349, 355; *Matter of Jackson,* 175 Misc. 882, 886, 892, *supra.* Likewise, the absence of a general charitable or benevolent use in the gift considered in *Matter of Merritt,* 280 N. Y. 391, 400, and the presence of a gift over in *Matter of Price,* 264 App. Div. 29, 32, affd. 289 N. Y. 751, and other cases involving wills containing factors existing in the *Fletcher, Merritt* and *Price* cases, *supra,*

render those cases distinguishable and not controlling here.)

The plan of the testator may be effectuated under cy pres to preserve the worthwhile charity by applying the gift in furtherance of its general laudable and commendable charitable purposes.

In the exercise of its cy pres powers the court is afforded " ' a large measure of discretion.' " (*City Bank Farmers Trust Co.* v. *Arnold*, 283 N. Y. 184, 195, *supra*, 268 N. Y. 297, 305, *supra*; *Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462, 473, *supra*.) Its application " necessarily assumes that the literal terms of the bequest or trust will not, because they cannot, be fully executed.

" It is not decisive, therefore, that the disposition * * * will result in a deviation from the terms of the bequest, if * * * the general charitable intention of the testatrix is carried out." (*Matter of Gary*, 248 App. Div. 373, 375, *supra*.)

Several plans, as hereinabove indicated, for the effectuation of testator's general charitable intention, have been suggested by petitioner and the Sisters. The Attorney-General offers none.

In *Matter of Rupprecht* (271 App. Div. 376, *supra*) Justice Dowling, while agreeing with the court below that the case was a proper one for invoking the cy pres doctrine, disapproved and modified the method adopted by the Surrogate in carrying out testator's general charitable intention because (p. 381): " The gift here was for a particular charitable purpose definitely specified in the will and the trust cannot be unhitched from that purpose as was done in *Matter of Neher* (279 N. Y. 370, 374)."

The court does not believe that the suggested plans which would give the residue to the Sisters or to the House of Calvary would best carry out or most nearly approach the general charitable purposes of the testator. He visited the Sisters on a number of occasions and was advised of its members' activities at the House of Calvary. While he may have been entirely satisfied with the nature and extent of the charitable services rendered by the Sisters, he was not desirous nor was it his intention that they be the recipients of his residue except for the purposes specified by him, or that the gift be used in connection with their work in the House of Calvary. Primarily and predominantly, his intent and purpose is apparent to start a " Brooklyn " cancer project, under Catholic auspices, in this borough where he had his interests and of which he was a lifelong resident. Only when his primary purpose was accomplished, would his secondary purpose, tied to the first, in having the Sisters conduct and operate the institution with its ultimate

transfer to it, take effect. If he had thought otherwise, he would have made provision for the use of the residue to that end.

It is with this view in mind that the court, in the exercise of its cy pres powers, directs that the residue be given over to the Saint Catherine's Hospital Association of the City of Brooklyn, New York, which shall administer and apply the funds for purposes which will best and nearly as possible carry out the general charitable purposes intended by the testator, namely, to aid and assist in alleviating persons afflicted with cancer.

There remains for determination the questions raised in connection with paragraph " Tenth " of the will. The first subdivision thereof standing alone creates a valid trust of the bonds for the benefit of the nephew which would vest in him both the income and the principal, but with payment of principal postponed until his attaining the age forty-five years, and with payment over to his legal representative in the event he sooner dies (*Matter of Staats,* 272 App. Div. 139, affd. 297 N. Y. 648; *Matter of Degnon,* 57 N. Y. S. 2d 674; *Matter of Ebbets,* 46 N. Y. S. 2d 828, 844, 846). The next subdivision in the same paragraph, however, raises doubt as to what condition or conditions, if any, attached to the gift in trust, and whether or not there has been performance of the condition or conditions so as to entitle the beneficiary to the fruits thereof. By said subdivision, the bequest to the nephew " is for his agreement to act as attorney and representative of Saint Mary's Brooklyn Free Home for Cancer Patients * * *, if and when established, at the average annual salary of Twelve Hundred ($1,200.00) Dollars, said *salary* to begin after he notifies the Sisters of his acceptance of the office to act as attorney and representative." (Italics by the court.)

The court holds, under the language used in creating this trust, that testator intended to impose thereon only the condition that the beneficiary agree to act as attorney and representative of the institution or home named in said paragraph, and referred to in more detail in paragraph " Eleventh ", if and when established. There is no specific provision, nor may it be inferred from the wording of the provisions, evincing an intent to impose upon the gift and the vesting thereof a further condition that actual establishment of the institution was a prerequisite to the effectiveness of the gift or the retention of the nephew by such institution.

Since it is not questioned that the beneficiary has performed the condition upon which the gift is limited, the court holds that

that bequest creates a valid trust with income payable to the named beneficiary until he attains age forty-five years, at which time the principal is to be delivered over to him, or, in the event of his death prior to attaining such age, to his legal representative.

Testator's nephew makes the claim that, having agreed to act as attorney and representative of the institution referred to in paragraphs " Tenth " and " Eleventh ", if and when established, he is entitled to receive an annual average salary of $1,200 for such services. He also contends that, in the event the court invokes the cy pres doctrine, any fund delivered over to a substitute for the institution intended by testator should be subjected to an annual charge of $1,200 in his favor upon his agreement to act for the institution chosen as a cy pres substitute.

The court is satisfied that testator did not intend to impose on the gift in trust any condition of the nature asserted by his nephew. The provision for salary was not intended to be a charge against the residuary estate. Testator did not make an absolute gift to the nephew of $1,200 per annum payable to him in any and every event, whether for life or for a lesser period. Payment of an " average annual salary of " $1,200 could only be for services rendered " as attorney and representative of St. Mary's Brooklyn Free Home for Cancer Patients hereinafter mentioned, *if and when established.*" (Italics by the court.)

If it was testator's intention that the trustee, who was empowered and directed to found and establish the institution or home and maintain it for a suitable and reasonable period, retain the services of his nephew, such direction, absent in the will a legal alternative direction or disposition, would not be binding upon the trustee since it is well settled that there is no testamentary power to control fiduciaries in the choice of attorneys who shall act for them in their representative capacity (*Matter of Roth,* 291 N. Y. 1, 5, citing *Matter of Caldwell,* 188 N. Y. 115, 121, and *Matter of Olney,* 255 App. Div. 195. See, also, *Matter of Wallach,* 164 App. Div. 600, 602, affd. 215 N. Y. 622; *Hughes* v. *Hiscox,* 105 Misc. 521, 527–528, 110 Misc. 141, 142–144).

Nor is the court satisfied that testator intended to impose as a condition to the receipt by the Sisters of the trust property from the trustee, that the Sisters retain the services of his nephew as attorney and representative of the institution, if and when established. This is evident from the language used.

862

The trustee was directed to make appropriate arrangements with the Sisters " for the conduct and operation by their members of the said home or institution." That having been done, the trustee, in his discretion at the proper time, was to transfer and convey the specified trust property to the Sisters. Testator did not direct his trustee to arrange with the Sisters concerning the hiring of his nephew, nor did he attach to the transfer and conveyance to the Sisters a condition, precedent or subsequent, that his nephew be retained.

However, even if it was the intention that the Sisters retain the services of his nephew, and therefore a condition imposed upon its receipt of the trust assets, the condition would necessarily be a condition subsequent to and predicated upon the actual establishment of the home or institution and its existence as an entity. This must be so for the failure of performance in engaging the nephew as attorney and representative could obviously not eventuate until the home or institution has come into being, in respect to which his services were intended. In this connection, the discussions and authorities cited in the following cases may be read with interest: *Matter of Wallach* (164 App. Div. 600, 603, *supra*); *Matter of Brigg* (39 App. Div. 485, 488–489); *Matter of Dettmer* (177 Misc. 349, 354, *supra*); *Matter of Allen* (45 N. Y. S. 2d 699, 702–704).

Literal compliance with the provisions of paragraph " Eleventh " having been found by the court to be impracticable and impossible of performance, with the consequent application of cy pres, the intention of the testator, whatever it may have been and however it may be denominated, cannot be carried out and given effect, since the payment of " salary " necessarily contemplated the rendition of services to a particular institution which is nonexistent and not in contemplation. The claim of the nephew is, therefore, denied *in toto*.

Submit decree, on notice, accordingly.